**Justine SMELTZER, Plaintiff,**

v.

**Nancy R. HOOK et al., Defendants.**

No. 4:02–CV–137.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 29, 2002.

738

Justine Smeltzer, Muskegon Heights, MI, Pro se.

## *OPINION*

MCKEAGUE, District Judge.

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB.L. No. 104–134, 110 STAT. 1321 (1996) ("PLRA"), "no action shall be brought with respect to prison conditions ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because Plaintiff has failed to demonstrate exhaustion of available administrative remedies, the Court will dismiss his complaint without prejudice.

## *Discussion*

### I. *Factual Allegations*

Plaintiff is currently incarcerated in the Brooks Correctional Facility. In his *pro se* complaint, Plaintiff sues the following Brooks employees: Nancy Hook, L. Jones, Mary Berghuis, Jo Ann Bach, R. Brand, J. Minnerick and unknown parties. In addition, Plaintiff sues the Michigan Department of Corrections and the State of Michigan.

In August 2001, Plaintiff pled no contest to two counts of third-degree sexual conduct with regard to his minor daughter, and was sentenced to imprisonment of 10–15 years. In March 2002, Plaintiff's parental rights were terminated over his objections by the Hillsdale County Circuit Court. The state court also entered an order that Plaintiff "shall have no contact, in person, by letter or by phone, with the minor children or Leann Smeltzer [Plaintiff's wife]." Several administrative hearings were held at Brooks as a result of Plaintiff's attempts to communicate with his wife in violation of the no contact order. The first hearing, held on April 8, 2002, concerned three letters that Plaintiff had written to his wife. (*See* 4/8/02 Administrative Hearing Report, docket # 5). The hearing officer, Defendant L. Jones, determined that the mail would be turned over to the Hillsdale County Circuit Court. Plaintiff was notified that further attempts to contact his wife or children would result in appropriate disciplinary action.

The second administrative hearing, held on April 17, 2002, concerned Plaintiff's attempts to contact his wife by phone. (*See* 4/17/02 Administrative Hearing Report, docket # 5). In order to use the telephone, a prisoner must complete a form identifying the names and numbers of no more than twenty people and organizations that he wants to be able to call. *See* MICH. DEP'T OF CORR. Policy Directive 05.03.130, L

("Prisoner Telephone Use"). The prisoner is provided a PIN which allows access to the numbers on his list. *Id.* Plaintiff's wife's telephone number was not on his list, but he allegedly used another prisoner's PIN in order to make nine phone calls to his wife. The telephone policy provides that a prisoner who abuses his telephone privileges may be restricted from using the phone. Policy Directive 05.03.130, FF. Making a call in violation of state law and using another prisoner's PIN are specifically listed in the policy as examples of abuse. *Id.* at FF(3), (10). As a result of Plaintiff's conduct, he was placed on a permanent telephone restriction, whereby he is only permitted to make calls to attorneys and legitimate legal services organizations. *Id.* at HH. Under the telephone policy, the warden must receive written approval from the Regional Prisoner Administrator if the restriction exceeds six months. *Id.* at GG. Accordingly, Warden Berguis sought approval from Regional Prisoner Administrator Jo Ann Bach. (*See* 5/1/02 Memorandum, docket # 5.)

At least three more administrative hearings were held regarding Plaintiff's attempts to send mail to his wife. (*See* 4/26/02, 6/3/02, 6/19/02 Administrative Hearing Reports, docket # 5). In the June 19 administrative hearing report, Hearing Officer Jones explicitly ordered Plaintiff to cease any and all contact with his wife and children. Defendant Nancy R. Hook also wrote misconduct reports against Plaintiff for writing to his wife in violation of the no contact order. The April 25 major misconduct report indicated that Plaintiff attempted to conceal his conduct by using another prisoner's return address and addressing the letter to his wife using her middle and maiden names. (*See* 4/25/02 Major Misconduct Report, docket # 5.) Plaintiff was ultimately found guilty of a minor misconduct for unauthorized communication. (*See* 5/9/02 Major Misconduct Hearing Report, docket

# 5.) The hearing officer found that Plaintiff was not guilty of the major offense because the April 8, 2002 administrative hearing report did not include a direct order not to contact his wife or children. Plaintiff was found guilty of two additional charges of unauthorized communication. (*See* 5/21/02, 5/22/02 Minor Misconduct Violation and Hearing Reports, docket # 5.)

Plaintiff claims that the permanent telephone restriction violates his First, Eighth and Fourteenth Amendment rights. He further claims that Defendants have opened and interfered with his outgoing and incoming mail in violation of his Fourth, Eighth and Fourteenth Amendment rights. Plaintiff also raises claims regarding the adequacy of the prison grievance process. He contends that Defendants have deprived him of his First Amendment right to petition the government for redress and his Fifth Amendment due process rights by failing to provide a fair and just grievance process.

## II. *Lack of exhaustion of available administrative remedies*

■ Plaintiff has failed to sufficiently allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter,* 122 S.Ct. at 984; *Booth,* 532 U.S. at 741, 121 S.Ct. 1819. A district court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir.),

*cert. denied*, 525 U.S. 833, 119 S.Ct. 88, 142 L.Ed.2d 69 (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir.1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir.), *cert. denied*, 531 U.S. 1040, 121 S.Ct. 634, 148 L.Ed.2d 542 (2000). A prisoner must also specifically mention the involved parties in the grievance to alert the prison officials of the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir.2001).

Plaintiff's claims are the type that may be grieved through the three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy and procedure or unsatisfactory conditions of confinement") (effective Nov. 1, 2000). Plaintiff wrote a Step I grievance on June 5, 2002, claiming that staff had been wrongfully opening his outgoing mail and preventing it from being delivered. (*See* Grievance No. LRF 02–06–00983–28B). The grievance generally referred to "staff persons," but did not name any specific individuals in his grievance. The grievance was rejected at Step I by Defendant Minnerick because it contained extraneous information and was untimely. A rejection of a grievance may be appealed. MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ H (effective Oct. 11, 1999 and Nov. 1, 2000); *see also Little v. Bahr*, 221 F.3d 1335, 2000 WL 921978, at *1 (6th Cir.2000) (holding that a rejection of a grievance is itself a response that must be appealed). Plaintiff does not allege or show that he appealed the rejection of his grievance to Step II.

A plaintiff must pursue all levels of the administrative procedure before filing an action in federal court. *See Freeman*, 196 F.3d at 645 ("While we recognize that plaintiff made some attempt to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed."); *Lutchey v. Wiley*, 188 F.3d 508, 1999 WL 645951, at *1 (6th Cir.1999) (dismissal of claim for lack of exhaustion was appropriate where prisoners failed to complete the review process before bringing their lawsuit); *Parker v. McGinnis*, 181 F.3d 102, 1999 WL 283900, at *2 (6th Cir.1999) ("Furthermore, even though Larkins may not have aborted the grievance procedure regarding the ninth cause of action raised in his complaint, such grievance was not resolved prior to the filing of either his complaint or amended complaint and, consequently, is unexhausted."), *cert. denied*, 528 U.S. 953, 120 S.Ct. 378, 145 L.Ed.2d 295 (1999); *Tucker v. McAninch*, 162 F.3d 1162, 1998 WL 552940, at *2 (6th Cir.1998) (plaintiff failed to complete the administrative process when he had grieved and appealed to the warden, but had one more appeal remaining to the director of the department). Because Plaintiff failed to complete the grievance process, the Court finds that Plaintiff has failed to demonstrate exhaustion of available administrative remedies with regard to the claims arising from his mail.

Before the no contact order was entered by the Hillsdale County Circuit Court on March 21, 2002, Plaintiff wrote two grievances claiming that prison staff

failed to update his wife's telephone number on his list. According to Plaintiff, his wife had moved and had a new phone number. Plaintiff wrote the first grievance on January 31, 2002. (*See* Grievance No. LRF 02–02–00215–23A, docket # 5.) The Step I response indicated that Plaintiff's request could not be processed until they received a letter from Plaintiff's wife. The response further indicated that the letter already submitted by Plaintiff did not appear to come from Plaintiff's wife. Plaintiff appealed to Step II on March 6, 2002. By the time Warden Berghuis responded at Step II, the no contact order had been entered. The Step II response stated that, as a result of the no contact order, Plaintiff would not be permitted to add or change telephone numbers with regard to wife and children. Plaintiff maintains that he appealed the Grievance to Step III, but never received a response. In light of Plaintiff's allegations, the Court finds that Plaintiff completed the grievance process with regard to Grievance No. LRF 02–02–00215–23A.

On March 2, 2002, Plaintiff wrote the second grievance concerning prison staff's failure to update his wife's telephone number. (*See* Grievance No. LRF 02–03–00412–28A, docket # 5.) The grievance was rejected at Step I by Defendant Minnernick because it was duplicative of LRF 02–02–00215–23A. As set forth above, the rejection of a grievance can be appealed. *See* Policy Directive 03.02.130, ¶ H. Plaintiff does not allege or show that he appealed the rejection of his grievance to Step II. Accordingly, Plaintiff failed to complete the grievance process with regard to Grievance No. LRF 02–03–00412–28A.

Plaintiff also wrote a grievance on April 15, 2002, challenging the imposition of the permanent phone restriction. (*See* Grievance No. LRF 02–04–0064–623A, docket # 5.) The Step I and Step II responses indicated that the restriction was properly imposed. Plaintiff contends that he appealed to Step III, but did not receive a response. Taking Plaintiff's allegations as true, the Court accepts at this juncture that Plaintiff also completed the administrative grievance process with regard to Grievance No. LRF 02–04–0064–623A.

While Plaintiff completed the grievance process with regard to Grievance Nos. LRF 02–02–00215–23A (updating wife's phone number) and LRF 02–04–0064–623A (phone restriction), Plaintiff did not mention any of the named Defendants in those grievances. In *Curry,* 249 F.3d 493, a group of African–American inmates at an Ohio state prison sued corrections officers and supervisors under § 1983, alleging the defendants violated their Eighth Amendment rights. Among other things, the plaintiffs claimed that Officer Scott assaulted each of them while they were connected to each other by a "rec-chain," a long length of chain used to transport prisoners. The plaintiffs further claimed that Officer Howard witnessed Scott's assault on them, but failed to intervene. The Sixth Circuit held that the plaintiffs failed to sufficiently exhaust their administrative remedies with regard to Officer Howard because his name was not referenced in any of the prisoners' grievances. *Id.* at 505. The Court reasoned:

> The claim against Howard, however, is a separate claim, against a separate individual, premised on a separate and independent legal theory. Because Howard was not mentioned in the prisoners' grievances, [prison officials] did not know that the prisoners specifically had a grievance against him, so [prison officials] had no reason to pursue any claim or disciplinary action against Howard based on the prisoners' official complaints. As this Court stated in *Freeman v. Francis,* 196 F.3d at 644, "the importance of using the prison grievance process [is] to alert prison officials to

problems." The plaintiffs' grievances may have alerted [prison officials] to problems with Scott, but they did not reasonably alert [prison officials] to problems with Howard.

*Id.* The logic of *Curry* does not apply with equal force to this case. Plaintiff does not raise Eighth Amendment claims arising from alleged unauthorized conduct; rather, Plaintiff challenges a permanent telephone restriction that was imposed pursuant to prison policy. In addition to the hearing officer who recommended the telephone restriction, Plaintiff sues Warden Berguis and Regional Prison Administrator Jo Ann Bach, who approved the restriction. Under the circumstances of this case, it does not appear that prison officials responding to Plaintiff's grievances were hampered in their consideration of Plaintiff's claims by his failure to name specific individuals in his grievances.

■ Assuming Plaintiff properly exhausted his claims arising from the telephone restriction, his action is nonetheless subject to dismissal pursuant to the "total exhaustion rule." Under the total exhaustion rule, the presence of an unexhausted claim warrants dismissal not just of that claim, but of the entire action. There is currently a split in this District concerning the validity of the "total exhaustion" interpretation of 42 U.S.C. § 1997e(a). *Compare Keenan v. Twommy*, No. 1:97–cv–549 (W.D.Mich. July 29, 1999) (applying total exhaustion rule) with *Jenkins v. Toombs*, 32 F.Supp.2d 955 (W.D.Mich.1999) (rejecting total exhaustion rule). In *Knuckles El*, 215 F.3d at 642, the Sixth Circuit "reserve[d] to another day the question of whether 'exhausted claims' in a 'mixed complaint' should be addressed when such claims would otherwise meet the pleading requirement or whether such claims should be dismissed in their entirety." The Court has not published any case since *Knuckles El* expressing any opinion with regard to the total exhaustion rule.

In 2000, the Sixth Circuit issued five unpublished decisions, which, at first glance, appear inconsistent with the total exhaustion rule. In each of the opinions, the Court stated, "If a complaint contains exhausted and unexhausted claims, the district court may address the merits of the exhausted claims and dismiss only those that are unexhausted." *See Williams v. McGinnis*, 234 F.3d 1271, 2000 WL 1679471, at *2 (6th Cir.2000); *Fisher v. Wickstrom*, No. 00–1162, 2000 WL 1477232, at *1 (6th Cir. Sept. 25, 2000); *McElhaney v. Elo*, 230 F.3d 1358, 2000 WL at 1477498, at *3 (6th Cir.2000); *Wash v. Rout*, 215 F.3d 1328, 2000 WL 658925 (6th Cir.2000), *cert. denied*, 531 U.S. 947, 121 S.Ct. 347, 148 L.Ed.2d 279 (2000); *Riley v. Richards*, 210 F.3d 372, 2000 WL 332013, at *2 (6th Cir.2000). These cases all relied upon *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999). While the *Hartsfield* Court dismissed the unexhausted claims and reached the merits of exhausted claims, the issue of total exhaustion was not before the Court. Likewise, total exhaustion was not at issue in any of the above cited unpublished cases. As a result, these cases have little instructive value on the issue of total exhaustion.

During the same time period that the unpublished decisions were issued in *Williams, Fisher, McElhaney, Wash* and *Riley*, the Sixth Circuit affirmed this Court's denial of Keenan's motion for relief from judgment following dismissal of his civil rights action pursuant to the total exhaustion rule. *See Keenan v. Twommey*, 229 F.3d 1152, 2000 WL 1175621, at *1 (6th Cir.2000). In the unpublished opinion, the Sixth Circuit did not use the term "total exhaustion," but affirmed this Court's explicit application of the total exhaustion rule, stating, "Essentially, Keenan did not carry his burden of demonstrating that he exhausted available administrative remedies regard-

ing his claim." *Keenan,* 229 F.3d 1152, 2000 WL 1175621 at *1 (citing *Brown,* 139 F.3d at 1103). Furthermore, in a recent unpublished decision, the Sixth Circuit again affirmed this Court's application of the total exhaustion rule. *See Kemp v. Jones,* 42 Fed.Appx. 744, 745 (6th Cir.2002). In that case, the plaintiff claimed that the defendants interfered with his legal mail, were negligent in handling his mail, and retaliated against him. The Sixth Circuit held that this Court properly dismissed the plaintiff's action pursuant to § 1997e(a) because, while the plaintiff exhausted his other claims, he did not exhaust his administrative remedies with regard to his retaliation claim. *Id.* (*citing Mack v. DeWitt,* 40 Fed.Appx. 36, 38) (6th Cir.2002) ("When a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate.") Accordingly, there is some indication that the Sixth Circuit may adopt the total exhaustion rule.

The Eighth Circuit, the only federal circuit court deciding the issue, applied the total exhaustion rule in a published opinion. *See Graves v. Norris,* 218 F.3d 884, 886 (8th Cir.2000). The federal district courts remain split on the issue. *Compare Rivera v. Whitman,* 161 F.Supp.2d 337, 343 (D.N.J.2001) (holding that plain language and policy interests required "total exhaustion" rule), *abrogated on other grounds by Ray v. Kertes,* 285 F.3d 287, 293 n. 6 (3d Cir.2002), *Thorp v. Kepoo,* 100 F.Supp.2d 1258 (D.Haw.2000) (same), *Taylor v. Clarke,* No. C 99–4190, 2002 WL 535421, at *2 (N.D.Cal. Apr. 3, 2002), *Julian–Bey v. Crowley,* No. 2:99–cv–107, 2000 U.S.Dist. LEXIS 14071 (W.D.Mich. Sept. 21, 2000), *Keenan,* No. 1:97–cv–549, 1999 U.S.Dist. LEXIS 11829 (W.D.Mich. July 29, 1999) (mem. opinion and order denying Fed.R.Civ.P. 60(b) motion) (same), *aff'd,*

229 F.3d 1152, 2000 WL 1175621 (6th Cir. 2000), *Keenan,* No. 1:97–cv–549 (W.D.Mich. Sept. 4, 1998) (opinion and order dismissing case) (same), *Abenth v. Palmer,* No. C 96–3938 MHP, 1997 WL 255332 (N.D.Cal. Apr. 28, 1997) (same), *Estrada v. Gomez,* No. C 97–297 SI PR, 1997 WL 220313 (N.D.Cal. Apr. 22, 1997) (same), and *Eakins v. Stainer,* No. C 97–694 SI (pr), 1997 WL 122866 (N.D.Cal. Mar. 5, 1997) (same) *with Johnson v. True,* 125 F.Supp.2d 186 (W.D.Va.2000) (holding that "total exhaustion" rule contradicts congressional intent), *Cooper v. Garcia,* 55 F.Supp.2d 1090 (S.D.Cal.1999) (same), and *Jenkins v. Toombs,* 32 F.Supp.2d 955 (W.D.Mich.1999) (same).

The total exhaustion rule is supported both by the plain meaning of 42 U.S.C. § 1997e(a) and strong policy interests. The first rule of statutory interpretation is that "[t]here is ... no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. American Trucking Ass'ns, Inc.,* 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). Departure from the language of the legislature and resort to judicially created rules of statutory construction is appropriate only in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters ... or when the statutory language is ambiguous." *Kelley v. E.I. DuPont de Nemours & Co.,* 17 F.3d 836, 842 (6th Cir.1994) (citation and internal quotations omitted). The plain meaning of the statute controls the court's interpretation in all other instances. *Kelley,* 17 F.3d at 842. Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them. *Caminetti v.*

*United States,* 242 U.S. 470, 485–86, 37 S.Ct. 192, 61 L.Ed. 442 (1917).

Section 1997e(a) provides, "No *action* shall be brought with respect to prison conditions under section 1983 of this title . . . until such administrative remedies as are available are exhausted." 28 U.S.C. § 1997e(a) (emphasis added). By using the word "action" instead of "claim," Congress indicated that a prisoner is required to exhaust all claims before his action may proceed. *See Rivera,* 161 F.Supp.2d at 340; *Keenan,* 1999 U.S.Dist. Lexis 11829, at *13–14. "Had Congress intended to permit the piecemeal adjudication of claims relating to prison conditions, the statute would have precluded the bringing of unexhausted *claims* rather than *actions."* *Thorp,* 100 F.Supp.2d at 1263 (emphasis in original). The use of the words "action" and "claim" in other provisions of § 1997e are further evidence of Congress' awareness of the difference between the two terms. Section 1997e(c)(1) provides that the district court shall dismiss any "action" which is frivolous, malicious, or fails to state a claim. However, § 1997e(c)(2) provides that the district court may dismiss a "claim" which is frivolous, malicious or fails to state a claim without first requiring exhaustion of administrative remedies. Congress realized that requiring dismissal without prejudice under § 1997(a) might prevent a court from dismissing with prejudice for frivolousness or failure to state a claim. Section § 1997e(c)(2) serves to reconcile

§ 1997(a) and § 1997(e)(1) "by allowing a court to dismiss an unexhausted claim as frivolous, thus preventing an unexhausted claim from 'holding up' the dismissal of a frivolous action comprising otherwise exhausted claims." *Rivera,* 161 F.Supp.2d at 341; *see also Thorp,* 100 F.Supp.2d at 1263 n. 3.[1]

The general intent of the PLRA and other strong policy arguments also support a total exhaustion rule. As noted by the Eleventh Circuit, Congress amended section 1997e(a) largely in response to concerns about the heavy volume of frivolous prison litigation in the federal courts. *Alexander v. Hawk,* 159 F.3d 1321, 1326 n. 11 (11th Cir.1998) (citing 141 Cong.Rec. H14078–02, *H14105 (daily ed. Dec. 6, 1995)). "Congress desired 'to wrest control of our prisons from the lawyers and the inmates and return that control to competent administrators appointed to look out for society's interests as well as the legitimate needs of prisoners.' " *Id.* (quoting 141 Cong.Rec. S14408–01, *S14418 (daily ed. Sept. 27, 1995)).

The total exhaustion rule advances the goals of the PLRA by discouraging frivolous prisoner litigation and conserving judicial resources.

As the Third Circuit stated in [*Nyhuis v. Reno,* 204 F.3d 65 (3d Cir.2000)], "Inmate-plaintiffs often file claims which are untidy, repetitious, and redolent of legal language. The very nature of such complaints necessitates that courts ex-

---

1. In another provision of the PLRA, Congress defined the term "action, with regard to prison conditions" as "any civil proceeding . . . with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison. . . ." 18 U.S.C. § 3626(g)(2); *see Booth v. Churner,* 206 F.3d 289, 295 (3d Cir.2000) (holding that, because § 1997e(a) and § 3626(g)(2) are substantially related, "it follows from the canon of interpretation invoked

in [*Sullivan v. Stroop,* 496 U.S. 478, 484, 110 S.Ct. 2499, 110 L.Ed.2d 438 (1990)] that the identical terms used in the two sections should be read as conveying the same meaning."), *aff'd,* 531 U.S. 956, 121 S.Ct. 377, 148 L.Ed.2d 291 (2001). Giving the words their plain meaning, a clear distinction can be drawn among the terms "action" or "civil proceeding" and "claim." *See Rivera,* 161 F.Supp.2d at 341.

pend significant and scarce judicial resources to review and refine the nature of the legal claims presented." 204 F.3d at 74. "The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures." *Id.* at 76 (*citing Wyatt v. Leonard,* 193 F.3d 876, 878–79 (6th Cir.1999)). Thus, by requiring that all claims be exhausted before the federal court considers them, § 1997e(a) ensures that prisoner actions are more focused and that some frivolous claims are screened out. Additionally, the provision frees the federal court from the potentially difficult and time-consuming process of determining precisely which of the often-entangled claims have been exhausted and which have not. *Keenan,* 1999 U.S.Dist. LEXIS 11829, at *8.

*Rivera,* 161 F.Supp.2d at 342. The total exhaustion rule also discourages prisoners from bringing unexhausted or frivolous claims. *Id.* (citing *Underwood v. Wilson,* 151 F.3d 292, 296 (5th Cir.1998) ("[D]ismissal may serve as a deterrent to premature filing by [prisoners], thus serving the Congressional purpose of providing relief from frivolous prisoner litigation."), *cert. denied,* 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999)). If only the unexhausted claims were dismissed from a mixed complaint, there would be nothing to deter prisoners from raising unexhausted claims indiscriminately. Moreover, the assessment of a second filing fee after the prisoner has properly exhausted all of his claims also serves as a deterrent against filing unexhausted or frivolous claims. *Rivera,* 161 F.Supp.2d at 342 (citing *Keenan,* 1999 U.S.Dist. LEXIS 11829, at *9).

In addition, application of a total exhaustion rule in the civil rights context promotes comity in much the same way as in the habeas corpus context, where the total exhaustion rule is clearly established. *See Rivera,* 161 F.Supp.2d at 342–43; *Keenan,* 1999 U.S.Dist. LEXIS 11829, at *11–13. Regarding the amendments by the PLRA to § 1997e(a), the Sixth Circuit stated in *Brown v. Toombs,* 139 F.3d at 1103:

> The new statute has extensive benefits. It recognizes that it is difficult to explain why we require full exhaustion in habeas corpus cases involving life and liberty, but allow direct access in prison rights cases under § 1983. As Justice Stewart stated in *Preiser v. Rodriguez,* 411 U.S. 475, 491–92, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973):
>
> > Since these internal problems of state prisons involve issues so peculiarly within state authority and expertise, the states have an important interest in not being bypassed in the correction of these problems. Moreover, because most potential litigation involving state prisoners arises on a day to day basis, it is most efficient and properly handled by the state administrative bodies and the state courts, which are for the most part, familiar with the grievances of state prisoners and in a better physical and practical position to deal with these grievances.

Therefore, under the principles of comity, prison officials should have a full opportunity to address claims raised by prisoners before they are brought to federal court. By requiring total exhaustion, the federal courts will not only promote comity, but reap the benefits of "more focused complaints and more developed evidentiary records." *Rivera,* 161 F.Supp.2d at 343.

■ Because Plaintiff's complaint contains exhausted claims and unexhausted claims, the Court finds that he failed to exhaust his administrative remedies as required by § 1997e(a). Dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he

exhausted available administrative remedies. *See Freeman,* 196 F.3d at 645; *Brown,* 139 F.3d at 1104; *White v. McGinnis,* 131 F.3d 593, 595 (6th Cir.1997). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Omar v. Lesza,* No. 97 C 5817, 1997 WL 534361, at *1 (N.D.Ill. Aug. 26, 1997). Accordingly, the Court will dismiss Plaintiff's action without prejudice.

### III. *Motions*

Plaintiff filed an ex parte motion for temporary restraining order (docket # 3) and a motion to serve the complaint (docket # 4) contemporaneously with the filing of his complaint. Because Plaintiff's action will be dismissed without prejudice for failure to exhaust his administrative remedies, his motions will be denied as moot.

### *Conclusion*

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's action without prejudice because he has failed to show exhaustion as required by 42 U.S.C. § 1997e(a). In addition, Plaintiff's motion for temporary restraining order (docket # 3) and motion to serve the complaint (docket # 4) will be denied as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth,* 114 F.3d 601, 611 (6th Cir.1997). Because the total exhaustion rule presents a novel legal issue in this Circuit, the Court finds that an appeal would be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $105 appellate filing fee pursuant to § 1915(b)(1), *see McGore,* 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis,* e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $105 appellate filing fee in one lump sum.

A Judgment consistent with this Opinion will be entered.

### *ORDER OF DISMISSAL*

In accordance with the Opinion filed this date:

**IT IS HEREBY ORDERED** that Plaintiff's action be **DISMISSED** without prejudice for lack of exhaustion of available administrative remedies as required by 42 U.S.C. § 1997e(a).

**IT IS FURTHER ORDERED** that Plaintiff's motion for temporary restraining order (docket # 3) and motion to serve the complaint (docket # 4) will be **DENIED** as moot.

Because the total exhaustion rule presents a novel legal issue in this Circuit, the Court finds that an appeal would be taken in good faith. *See* 28 U.S.C. § 1915(a)(3); *McGore v. Wrigglesworth,* 114 F.3d 601, 611 (6th Cir.1997).