**James CHAMBERLAIN, Plaintiff,**

v.

**William OVERTON, et. al, Defendants.**

**Civil Action No. 03–CV–72562–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

June 4, 2004.

**812**

James Chamberlain, Jackson, MI, pro se.

Diane M. Smith, Michigan Department of Attorney General, Marvin L. Bromley, Lansing, MI, for Defendants.

## ORDER AFFIRMING MAGISTRATE JUDGE MONA MAJZOUB'S REPORT AND RECOMMENDATION

O'MEARA, District Judge.

The Court having reviewed the Magistrate Judge's Order, as well as any objections thereto filed by the parties, and being fully advised, now therefore;

IT IS ORDERED that the Court affirms the Magistrate Judge's Report and Recommendation.

## REPORT AND RECOMMENDATION

MAJZOUB, United States Magistrate Judge.

**RECOMMENDATION:** This Court recommends that Defendants' Motions To Dismiss be GRANTED as to all of the remaining Defendants and the instant case be dismissed based on Plaintiff's failure to exhaust his available administrative remedies.

\* \* \*

Plaintiff was allowed to proceed *in forma pauperis* and filed the instant complaint on July 10, 2003, pursuant to both 42 U.S.C. § 1983 and the Americans with Disabilities Act found at 42 U.S.C. § 12132 *et. seq.* Plaintiff contends that the Defendants violated his constitutionally secured civil rights.

The Defendants to this action are William Overton, Director of Michigan De-

partment of Corrections (MDOC), John Rubitschun, Chairman of the Michigan Parole Board, ·Janet Olszewski, Director of Michigan Department of Community Health (MDCH), Kenneth Longton, Director of Bureau of Forensic Mental Health Service (BFMHS) and Corrections Mental Health Program (CMHP), John Rushbrook, Regional Director of BFMHS and CMHP, Roy Calley, Regional Director of CMHP, Jan EPP, Regional Health Care Administrator for MDOC, Numa Cabrera, a supervising psychologist for MDCH, Kevin Petschow, psychologist employed by MDOC, Maria Alcala–Cardieu, a supervising psychologist at Parnall Correctional Facility, and Bruce Wright, a regional supervising psychologist employed by MDOC. On October 7, 2003, Defendants filed their respective Motions To Dismiss. The case was referred to Magistrate Judge R. Steven Whalen for all pretrial proceedings and on February 9, 2004, this Court issued Administrative Order 04–AO–10 reassigning the matter to Magistrate Judge Mona K. Majzoub.

In Plaintiff's complaint he alleges that he has, "since early childhood, been diagnosed by various psychiatrist [sic] as one suffering from a recognized mental disorder called Attention–Deficit/Hyperactivity Disorder (AD/HD)." (Plaintiff's First Amended Complaint, pg. 5, ¶ 18). For his condition and resulting aggressive behavior, Plaintiff was allegedly prescribed Inderal. Id. ¶ 21. Plaintiff continued taking Inderal during the first six months of his incarceration after which time he was evaluated by the Outpatient Mental Health Team (OMHT). Plaintiff was admitted to active status on OMHT and was recommended for treatment and medication. Id. In July 2002, Plaintiff was transferred to Parnall Correctional Facility and was allegedly "dropped from the [OMHT] program, without any kind of notice, evaluation, or follow-up, ..." Id. ¶ 23.

After his alleged removal from the OMHT program, Plaintiff allegedly experienced several incidents of "accidental self-injury due to his disorder, such as rupturing or otherwise injuring his eardrum with a Q-tip." Id. ¶ 24. "Plaintiff has additionally encountered numerous incidences of mismanagement, and has frequently exhibited uncontrollable behavior that endangers himself as well as others, which also frustrates his ability to rehabilitate himself." Id. ¶ 25. For these reasons, Plaintiff requested medication and consultation concerning his alleged AD/HD. Upon speaking with Defendant Petschow, Plaintiff was advised that "no treatment would follow due to budget constraints." Id. ¶ 27. Defendant Cabrera indicated to Plaintiff that the "admissions criteria for the CMHP's Outpatient Mental Health Services had changed, and that he anticipated that he could not admit Plaintiff for treatment based on the fact that he had AD/HD." Id. ¶ 28.

On September 4, 2002, Plaintiff filed an administrative grievance regarding Defendant Petschow and Cabrera. Plaintiff's Step I grievance was denied by Defendant Alcala–Cardieu and reviewed by Defendant Wright. Plaintiff appealed to Step II of the grievance process and received no response within the time prescribed by MDOC policy. Plaintiff filed a Step III grievance and while waiting for a response to the Step III grievance, he received an untimely response to his Step II appeal. The Step II appeal was denied by Defendant EPP. Shortly thereafter, Plaintiff received a denial of his Step III appeal from the office of Defendant Overton. Id. ¶¶ 31–34. Next, Plaintiff asserts that he is repeatedly

subjected to punitive measures without regard to his mental status by custody staff inadequately trained to differ-

entiate between inmates whose conduct is the result of mental disorder and inmates whose conduct is unaffected by disorder, and, when he invokes procedures governing the MDOC's disciplinary hearings program that are specifically related to prisoner hearings involving prisoners with mental illnesses or disorders, he is deprived [of] all benefit of that program on account of the MDOC's new policy of not recognizing his disorder as one causing significant impairment of judgment and behavior.

*Id.* ¶ 35. Based on his alleged exclusion from the OMHT program, Plaintiff contends that he has been deprived "of the benefits of yet another program within the MDOC; i.e., consideration for parole by the Michigan Parole Board, which repeatedly denies him parole based primarily on conduct which is attributable to his disorder, which the MDOC will not treat" (Plaintiff's Complaint, pg. 9, ¶ 36).

Plaintiff now argues that;

Defendants Overton, Olszewski, Longton, Rushbrook, Calley, and EPP, all of whom play a part in the development, structure, content, quality standards, implementation, and operation of the CMHP, have created and implemented a policy or custom that categorically excludes all prisoners with non-psychotic disorders (or at least those with the non-psychotic disorder with which Plaintiff suffers; i.e., AD/HD) from participation in the CMHP, irrespective of individual need, for strictly budgetary reasons.

*Id.* ¶ 44. Additionally, Plaintiff contends that "Defendants' policy or custom violates the Eight Amendment's Cruel and Unusual Punishment Clause inasmuch as it works to deprive him of necessary mental health care" and "Defendants' policy or custom ... violates Plaintiff's rights under the Fourteenth Amendment's Equal Protection Clause inasmuch as it provides necessary treatment for those with psychotic disorders, while it arbitrarily and invidiously deprives Plaintiff and others like him, suffering from non-psychotic disorders of similar origin and impact, of analogous treatment." *Id.* ¶ 45. Lastly, Plaintiff asserts that the "process for determining parole eligibility created by Defendant Overton, and developed and administered by Defendant Rubitschun, whereby negative five (–5) points are automatically assigned to prisoners like Plaintiff who have received mental health treatment, violates Title II of the ADA ..." *Id.* ¶ 54.

Defendants Cabrera, Rushbrook, Longton, and Olszewski, represented by the Michigan Attorney General's Community Health Division, filed a Motion To Dismiss based on Fed.R.Civ.P. 12(b)(6). Specifically, Defendants argue that Plaintiff's allegations are conclusory, merely demonstrate a disagreement over proper medical treatment, and fail to allege that the Defendants were personally involved in conduct violative of Plaintiff's constitutional rights. Alternatively, Defendants assert Eleventh Amendment immunity as a defense to Plaintiff's complaint. The remaining defendants, represented by the Michigan Attorney General's Corrections Division, have also filed a Motion To Dismiss for failure to exhaust administrative remedies. For the reasons set forth below, this Court recommends granting all of the Defendants' Motions To Dismiss.

### STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss, the trial court must accept all the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff. FED.R.CIV.P. 12(b)(6); *see Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995). "Dismissal of a complaint for the failure to state a claim upon which

relief may be granted is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir.2000).

## EXHAUSTION OF REMEDIES

The Prison Litigation Reform Act (PLRA) of 1995 requires that a prisoner exhaust all administrative remedies before filing a section 1983 action. Specifically, the statute provides, "no action shall be brought with respect to prison conditions under section 1983 ..., or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has declined to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner,* 532 U.S. 731, 741 n. 6, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). The Sixth Circuit has held that "prisoners filing a § 1983 case involving prison conditions must allege and show that they have exhausted all available state administrative remedies" before a district court may adjudicate their civil rights claims, and has also held that the district court should enforce this requirement *sua sponte. Brown v. Toombs,* 139 F.3d 1102, 1103 (6th Cir. 1998), *cert. denied,* 525 U.S. 833, 119 S.Ct. 88, 142 L.Ed.2d 69 (1998). Compliance with this provision requires that prisoners file a grievance against the person(s) they ultimately seek to sue, *Curry v. Scott,* 249 F.3d 493, 505 (6th Cir.2001), and merely grieving prison conditions, without identifying any particular person who may be responsible, is insufficient. *Gibbs v. Bolden,* 151 F.Supp.2d 854, 857 (E.D.Mich. 2001).

Generally, a prisoner will exhaust administrative remedies by filing grievances pursuant to MDOC policy. For example, a prisoner may grieve alleged violations of policy and procedure, unsatisfactory conditions of confinement, official acts, or denial of rights which directly affect [Prisoners] (MDOC Policy Directive 03.02.130, PB). The grievance system is comprised of three steps. If the grievant is dissatisfied with the step I response, he/she may appeal to step II. If the prisoner is still dissatisfied with the step II response, he/she may file a step III appeal with the Director of the MDOC. A Plaintiff must pursue all levels of the administrative procedure, even when prison officials fail to respond or respond in an untimely manner. *Grabinski v. Gundy,* 1999 U.S. Dist. LEXIS 4820 (W.D.Mich.1999) (citations omitted).

█ In his Response To Defendants' Motion To Dismiss, Plaintiff argues that exhaustion of administrative remedies prior to bringing an action alleging a violation of the ADA is not required. This Court disagrees. The plain language of the PLRA makes clear that "no action shall be brought with respect to *prison conditions under 1983, or any other Federal law,* by a prisoner confined in any jail, ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute does not apply solely to actions brought under 1983, but includes any action brought under Federal law which would include a claim based on the ADA. In *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the United States Supreme Court held that, unlike the previous exhaustion provision which encompassed only 1983 actions, the current PLRA's [exhaustion] requirement applies to all actions brought under 1983 or "any other Federal law" *Porter,* 534 U.S. at 524, 122 S.Ct. 983; *see also Burgess v. Garvin,* 2004 WL 527053, 2004 U.S. Dist. LEXIS 4122

(S.D.N.Y.2004)("Plaintiff raises no legal argument requiring departure from the Court's prior determination that the PLRA demands exhaustion of ADA claims")(internal citations omitted). Accordingly, Plaintiff was not relieved of his duty to exhaust his administrative remedies as to the prison conditions which he asserts violate the ADA.

Here, Plaintiff submitted documentation of one grievance identified as SMT 02–0901–1601–12F–1 ("12F"). In the Step I grievance, Plaintiff alleged the following:

> Appointment with [Defendant] Petschow in which he stated that no treatment would be made available to me, due to budget limitations. Kite to [Defendant] Cabrera, which he returned to me saying that he did not think that I was eligible for treatment.

(Plaintiff's Exhibit XIII). This grievance was appealed and denied at all three steps of the administrative grievance process. There were no other attachments documenting Plaintiff's attempt to file administrative grievances. Therefore, except for Petschow and Cabrera, Plaintiff has failed to demonstrate exhaustion as to all of the Defendants. The question now becomes whether Plaintiff should be allowed to proceed against Defendants Petschow and Cabrera in this mixed complaint containing both exhausted and unexhausted claims.

█ Under what is known as "the total exhaustion rule", the presence of an unexhausted claim in a prisoner civil rights complaint requires the dismissal of not just the unexhausted claim, but of the entire action. *Smeltzer v. Hook*, 235 F.Supp.2d 736, 742 (W.D.Mich.2002). By requiring the exhaustion of prisoner grievances through § 1997e(a), "Congress most certainly did not intend the inefficient result of permitting actions to proceed in part while other claims remained to be tried only after they had been exhausted", since such a result would be contrary to the primary purpose of requiring administrative exhaustion. *Thorp v. Kepoo*, 100 F.Supp.2d 1258, 1263 (D.Hawai'i 2000)(*citing McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992))("Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency").

The rule of "total exhaustion" is clearly supported by the language of § 1997e(a). By using the word "action" in section 1997e(a), rather than the word "claim", Congress clearly intended that a prisoner be required to exhaust all of his or her claims before an action can be filed in federal court. *Smeltzer v. Hook*, 235 F.Supp.2d at 744 (*citing Rivera v. Whitman*, 161 F.Supp.2d 337, 340 (D.N.J.2001); *abrogated on other grds by Ray v. Kertes*, 285 F.3d 287, 293 n. 6 (3d Cir.2002)). "Had Congress intended to permit the piecemeal adjudication of claims relating to prison conditions, the statute would have precluded the bringing of unexhausted *claims* rather than *actions*." *Thorp*, 100 F.Supp.2d at 1263 (emphasis in the original). Therefore, Congress' use of the word "action" in § 1997e(a) "suggests that an entire case is not ripe until those portions of the suit that may be exhausted have been." *Id.* Moreover, the use of the words "action" and "claim" in other provisions of 42 U.S.C. § 1997e are further evidence that Congress was aware of the difference between the two terms. *Smeltzer*, 235 F.Supp.2d at 744. Other recent district court cases support the "total exhaustion" rule. *See, e.g., Carrion v. Wilkinson*, 309 F.Supp.2d 1007, 1012 (N.D.Ohio 2004)(the failure to exhaust one claim in a prisoner civil rights complaint will result in the dismissal of the entire case, even where the inmate has exhausted his other claims).

The total exhaustion rule also furthers the objectives of the PLRA by discouraging frivolous prisoner lawsuits and by conserving judicial resources. *Smeltzer v. Hook,* 235 F.Supp.2d at 744. By requiring that all of a prisoner's claims be exhausted before a federal court will consider them, " § 1997e(a) ensures that prisoner actions are more focused and that some frivolous claims are screened out." *Id.* at 745. The total exhaustion rule also frees a federal district court "from the difficult and time-consuming process of determining precisely which of the often-entangled claims have been exhausted and which have not." *Smeltzer,* 235 F.Supp.2d at 745. Finally, the application of the total exhaustion rule in prisoner civil rights cases promotes state-federal comity in much the same way as in the context of habeas corpus petitions, where the rule of total exhaustion is clearly established. *Id.; Rivera v. Whitman,* 161 F.Supp.2d at 342–43.

As the Court in *Smeltzer* noted, only one circuit has appeared to have adopted the total exhaustion rule. *See Graves v. Norris,* 218 F.3d 884, 885 (8th Cir.2000). By contrast, the Sixth Circuit, in *Knuckles El v. Toombs,* 215 F.3d at 642, indicated that it would "reserve for another day" the question of whether exhausted claims in a "mixed" complaint should be addressed or whether such a complaint should be dismissed in its entirety. In other cases, however, the Sixth Circuit has hinted that it might adopt the total exhaustion rule. In *Julian–Bey v. Crowley,* 24 Fed.Appx. 393, 395, 24 Fed.Appx. 393 (6th Cir.2001), the Sixth Circuit held that the dismissal of a prisoner's civil rights complaint was appropriate, because the prisoner had not exhausted his available administrative remedies with respect to each of his claims. In so ruling, the Sixth Circuit noted that " *Brown [v. Toombs]* makes no provisions for a 'mixed complaint'. There must be exhaustion of every grievance filed." *Id.* In *Kemp v. Jones,* 42 Fed. Appx. 744, 745, 2002 WL 1808416 (6th Cir.2002), the Sixth Circuit affirmed the Western District of Michigan's application of the total exhaustion rule. The court in *Smeltzer* believed that the Sixth Circuit's ruling in *Kemp* was an indication that the Sixth Circuit might adopt the total exhaustion rule. *Smeltzer,* 235 F.Supp.2d at 743.

The court in *Smeltzer* acknowledged that there had been a number of unpublished Sixth Circuit cases which had suggested that if a prisoner civil rights complaint contained both exhausted and unexhausted claims, the district court could address the exhausted claims and dismiss the unexhausted ones. *Smeltzer,* 235 F.Supp.2d at 742 (collecting cases). The court in *Smeltzer* further noted that these cases relied on *Hartsfield v. Vidor,* 199 F.3d 305, 309 (6th Cir.1999). However, although the Sixth Circuit in *Hartsfield* dismissed the unexhausted claims and addressed the exhausted ones, the issue of total exhaustion was not before the Sixth Circuit in *Hartsfield,* nor was the issue before the Sixth Circuit in the unpublished cases. Therefore, these cases are of "little instructive value on the issue of total exhaustion." *Smeltzer,* 235 F.Supp.2d at 742.

Most recently, the Sixth Circuit indicated that while a district court is free, pursuant to *Hartsfield,* to address the merits of a prisoner's exhausted claims and dismiss only those that are unexhausted, the Sixth Circuit was unable to find any authority "for the proposition that a district court is required to cull out and address exhausted claims in a 'mixed' civil rights complaint." *Bomer v. Hakola,* 84 Fed.Appx. 585, 587, 2003 WL 23139935 (6th Cir.2003). The Sixth Circuit went on to hold that the district court properly dismissed the entire complaint without prejudice, where the prisoner had failed to exhaust his adminis-

trative remedies with respect to all of the defendants. *Id.* The Sixth Circuit made a similar ruling in another case. *See Byers v. Strachan,* 69 Fed.Appx. 274, 275, 2003 WL 21456241 (6th Cir.2003)(although court may address merits of exhausted claims and dismiss the unexhausted ones, the plaintiff cited to no authority which requires a district court to do so). Therefore, this Court recommends that Plaintiff's entire complaint be dismissed without prejudice under the total exhaustion rule.

Accordingly, this Court recommends that Defendants' Motions To Dismiss be GRANTED as to all of the named Defendants and the instant complaint dismissed without prejudice based on Plaintiff's failure to exhaust.

### NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Services,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n Of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection # 1," "Objection # 2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection # 1," "Response to Objection # 2," etc.

May 12, 2004.