*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0194p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LAMAR WILLIAM JONES BEY,

*Plaintiff-Appellant,*

*v.*

No. 03-2331

KELLY JOHNSON and WAYNE TRIERWEILER,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 02-00101—Robert Holmes Bell, Chief District Judge.

Submitted: December 3, 2004

Decided and Filed: April 27, 2005

Before: SILER and CLAY, Circuit Judges; BERTELSMAN, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:** John L. Thurber, OFFICE OF THE ATTORNEY GENERAL, Lansing, Michigan, for Appellees. Lamar William Jones Bey, Munising, Michigan, pro se.

SILER, J., delivered the opinion of the court, in which BERTELSMAN, D. J., joined. CLAY, J. (pp. 8-12), delivered a separate opinion concurring in part and dissenting in part.

---

**OPINION**

---

SILER, Circuit Judge. Plaintiff Lamar William Jones Bey appeals from an order entered by the United States District Court for the Western District of Michigan, granting summary judgment to defendants Kelly Johnson and Wayne Trierweiler and dismissing with prejudice Jones Bey's First and Eighth Amendment claims brought pursuant to 42 U.S.C. § 1983. Because Jones Bey did not fully exhaust his administrative remedies, we **REVERSE** and **REMAND** this case to the district court to dismiss his petition without prejudice.

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

**I.**

## A. Procedural History

Jones Bey is a prisoner at the Alger Maximum Correctional Facility in Munsing, Michigan. Johnson is a guard at the facility, and Trierweiler is the prison's grievance coordinator. Between October 2001 and April 2002, Jones Bey filed nine grievances against Johnson alleging various instances of misconduct and one against Trierweiler alleging a mishandling of these grievances.

Jones Bey filed this action against the defendants in their individual capacity in July 2002 claiming that both defendants violated his First Amendment rights, and that Johnson also violated his Eighth Amendment right to be free from the use of excessive force. The district court referred this case to a magistrate judge. The magistrate judge recommended that summary judgment be granted to the defendants because Jones Bey had not fully exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. Alternatively, the magistrate judge stated that even if Jones Bey had exhausted his administrative remedies, none of his claims was sufficient to survive summary judgment. The district court adopted the report and recommendation and granted the defendants' motion for summary judgment.[1]

## B. Factual History

### 1. Claims Against Defendant Johnson

In October 2001, Jones Bey alleges that he was arbitrarily refused his "yard," or his time to exercise in the prison yard. Johnson claims that Jones Bey was not fully dressed when she came to his cell, and, therefore, he not entitled to leave his cell. Jones Bey filed a grievance over this incident, in accordance with the Michigan Department of Corrections' three-step grievance procedure.[2] It was denied at all three steps.

After filing this initial grievance, Jones Bey contends that Johnson engaged in a series of retaliatory acts against him. Johnson allegedly came to Jones Bey's cell and said, "you like to write grievances huh? You know me and the counselor are related. I'm going to see if I can have him put some pressure on you to break you up from that habit."[3] Jones Bey filed a grievance concerning this statement which he claims was appealed through Step III, but the record shows that the director's office never received the grievance.

Jones Bey also contends that five days later, while he was out on his yard period, Johnson searched, or "shook down," his cell. When Jones Bey returned to his cell, he allegedly found his possessions in disarray and pages torn out of two of his Islamic books. When Jones Bey confronted Johnson on the issue, she allegedly used racial slurs and told him to write a grievance about his complaints. He did file a grievance against Johnson, complaining both about the search and the use

---

[1] Jones Bey also set forth a complaint for ethnic intimidation under Michigan state law. Because the district court dismissed all of his federal claims, it declined to exercise supplemental jurisdiction over this claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996).

[2] The Michigan Department of Corrections regulations require the prisoner to first file a grievance with the internal grievance coordinator at the prison in which he is incarcerated. If the grievance is denied at this level, the prisoner can appeal it to the prison's warden. If denied a second time, the prisoner can exercise a final appeal to the office of the Michigan Department of Corrections' director. *See* MDOC Policy Directive 03.02.130. Once the prisoner has undertaken all three of these steps, his grievance is considered fully exhausted.

[3] Apparently there is a grievance counselor at the prison named Robert Johnson. Defendant Johnson denies both that she is related to Robert Johnson and that she made this statement.

of racial slurs. He attached handwritten affidavits from two other prisoners claiming that they heard the sounds of paper tearing and the toilet flushing when Johnson was searching Jones Bey's cell. Again, this grievance was not appealed through Step III. Jones Bey sent a letter to the director's office concerning this grievance, but the return letter indicated that the director had not received Jones Bey's appeal on this grievance.

In December 2001, Jones Bey filed another grievance against Johnson for her use of racial slurs and derogatory language. He again attached handwritten affidavits from other prisoners who claim to have overheard these comments. This grievance was fully exhausted, but the prison determined that these claims had already been addressed at "the local level" and in Jones Bey's earlier grievances filed against Johnson.

On the same day, Johnson filed a major misconduct report against Jones Bey alleging "Assault and Battery (staff-victim)." Johnson's report alleged that in the course of returning Jones Bey to his cell, he spun his body around and swung Johnson's hands against the food slot as she was trying to remove his handcuffs, resulting in some redness and pain in her hands. Jones Bey, however, claimed that she handcuffed him too tightly and that she pulled on the handcuffs forcing *his* hands against the food slot. He claims that he suffered "extreme pain" as a result of this altercation, but an X-ray showed no broken bones. Three days later, Jones Bey filed a grievance against Johnson alleging that Johnson filed the major misconduct report in retaliation for all of the grievances he filed against her. He additionally alleges that Johnson fabricated the misconduct report in order to conceal her alleged misconduct.[4] In January 2002, he was cleared of all wrongdoing against Johnson after an independent hearing on the major misconduct charge.

Jones Bey alleges that after he was acquitted of the major misconduct, Johnson made threatening remarks about "getting even" and put him in a segregation yard as retaliation. He filed and exhausted a grievance with respect to this claim. He also filed another grievance against her for alleged use of more racial slurs. This grievance, too, was denied at all three stages. Finally, Jones Bey alleges in his complaint that an officer named Zimmerman "shook down" his cell and confiscated some of his legal papers on Johnson's orders. However, this complaint was never grieved. Johnson denies all of the allegations against her, claiming that she never made intimidating statements or retaliated against Jones Bey in any way.

### 2. Claims Against Defendant Trierweiler

Jones Bey's only claim against Trierweiler stems from Trierweiler's alleged mishandling of grievances filed by Jones Bey. Jones Bey states that Trierweiler arbitrarily rejected or denied his grievances because they were unclear, not concise, contained extraneous information, or related to non-grievable or already grieved issues. He also claims that Trierweiler did not follow the Prisoner's Grievance Policy set forth by the Michigan Department of Corrections. When this grievance reached Step III, the director noted that even if Trierweiler denied a grievance at Step I, Jones Bey could always have appealed his complaints to Steps II and III.

### II.

We review the district court's grant of summary judgment *de novo*. *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995). Furthermore, we review the district court's exhaustion determination in a PLRA case *de novo*. *Curry v. Scott*, 249 F.3d 493, 503 (6th Cir. 2001).

---

[4] Issues involving major misconduct reports are not grievable, presumably because the misconduct hearing should settle all claims relevant to the alleged misconduct. Jones Bey alleges that Johnson filed a major misconduct report in order to preclude him from filing a grievance. Because Johnson filed her misconduct before Jones Bey could file a grievance, Jones Bey had no choice but to defend his position at the hearing.

Because Jones Bey's complaint alleged both exhausted and unexhausted claims, we must definitively answer an open question in this circuit: whether the PLRA requires a complete dismissal of a prisoner's complaint when that prisoner alleges both exhausted and unexhausted claims. We hold that it does.

The PLRA requires that a prisoner must exhaust administrative remedies before filing suit in the district court. It states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2004). The plaintiff-prisoner has the burden of proving that a grievance has been fully exhausted, *Baxter v. Rose*, 305 F.3d 486, 488 (6th Cir. 2002), and the prisoner must attach documentation to the complaint as proof. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). Exhaustion is not jurisdictional; it is mandatory, *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999), even if proceeding through the administrative system would be "futile." *Hartsfield v. Vidor*, 199 F.3d 305, 308-10 (6th Cir. 1999).

Although the PLRA's exhaustion requirement is clearly mandatory as to each individual claim, we have specifically left unanswered the question of whether the PLRA's exhaustion requirement applies such that a "mixed" complaint, alleging both exhausted and unexhausted claims, must be completely dismissed for failure to exhaust administrative remedies. *See Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000) ("We reserve to another day the question of whether exhausted claims in a 'mixed' complaint should be addressed when such claims otherwise meet the pleading requirements or whether such a complaint should be dismissed in its entirety.").

Our cases addressing PLRA exhaustion are somewhat inconsistent. At least one of this court's prior decisions suggests that total exhaustion is not required under the PLRA. In *Hartsfield*, 199 F.3d at 309-10, the plaintiff's complaint alleged misconduct by five prison officials; however, the plaintiff only exhausted his administrative remedies against three defendants. Without addressing the issue of total exhaustion, we held that the exhausted claims could be addressed on the merits while the unexhausted claims could be dismissed without prejudice. *Id.* This procedure has been followed in some of our unpublished opinions. *See Williams v. McGinnis*, 234 F.3d 1271, 2000 WL 1679471, at *2 (6th Cir. Nov. 11, 2000) (unpublished table decision); *McElhaney v. Elo*, 230 F.3d 1358, 2000 WL 1477498, at *3 (6th Cir. 2000) (unpublished table decision); *Wash v. Rout*, 215 F.3d 1328, 2000 WL 658925, at *1 (6th Cir. May 10, 2000) (unpublished table case); *Riley v. Richards*, 2000 WL 332013, at *2 (6th Cir. Mar. 23, 2000) (unpublished table case). However, other unpublished decisions have affirmed the decisions of district courts requiring total exhaustion. *See Bomer v. Hakola*, 84 Fed. Appx. 585, 587 (6th Cir. 2003); *Kemp v. Jones*, 42 Fed. Appx. 744, 745 (6th Cir. 2002); *Mack v. DeWitt*, 40 Fed. Appx. 36, 38 (6th Cir. 2002); *Overholt v. Unibase Data Entry, Inc.*, 2000 U.S. App. LEXIS 14087, at *6 (6th Cir. June 14, 2000).

Acting without clear guidance from this court, the district courts in this circuit are split on whether the PLRA requires total exhaustion in cases involving "mixed" complaints. *Compare Hubbard v. Thakur*, 344 F. Supp. 2d 549, 558-59 (E.D. Mich. 2004) (rejecting total exhaustion rule); *Alexander v. Davis*, 282 F. Supp. 2d 609 (W.D. Mich. 2003) (same); *and Jenkins v. Toombs*, 32 F. Supp. 2d 955 (W.D. Mich. 1999) (same); *with Chamberlain v. Overton*, 326 F. Supp. 2d 811, 816 (E.D. Mich. 2004) (applying total exhaustion); *and Smeltzer v. Hook*, 235 F. Supp. 2d 736 (W.D. Mich. 2002) (same). Similarly, a split exists among the other circuits that have addressed this issue. *Compare Ross v. County of Bernalillo*, 365 F.3d 1181, 1190 (10th Cir. 2004) (applying total exhaustion); *Kozohorsky v. Harmon*, 332 F.3d 1141 (8th Cir. 2003) (same);[5] *and Graves v. Norris*,

---

[5]Jones Bey contends that the *Kozohorsky* case effectively overrules *Graves v. Norris*. This allegation–which was taken from *Alexander v. Davis*, 282 F. Supp. 2d 609, 612 (W.D. Mich. 2003)–is without merit. The *Kozohorsky* case clearly indicates that the Eighth Circuit abides by the total exhaustion rule. *Kozohorsky*, 332 F.3d at 1143.

218 F.3d 884 (8th Cir. 2000) (same); *with Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) (rejecting total exhaustion).  We now join the Tenth and Eighth Circuits in holding that total exhaustion is required under the PLRA.

The dissent suggests we are going contrary to *stare decisis* by refusing to follow a rule set out in *Hartsfield*, 199 F.3d at 310.  Although that decision follows the principle in application, it does not discuss total/partial exhaustion.  Perhaps the issue was not raised by the parties in that case.  We would never suggest repudiating a holding in a prior decision, but the author of the *Hartsfield* decision was also the author of the subsequent decision in *Knuckles El*, 215 F.3d at 642, in which this court "reserve[d] for another day" this very question.  *Id.*  The author of the dissent herein was also a member of the panel that decided *Knuckles El*.  Moreover, if the decision in *Hartsfield* was so clear, it is strange why other panels of this court and district courts in this Circuit have not always followed it.

We adopt the total exhaustion rule, in large part, because the plain language of the statute dictates such a result.  Section 1997e(a) states that no "action" shall be brought in federal court until administrative remedies have been exhausted.  However, in subsection (c), the statute allows district courts to dismiss frivolous "actions" *or* "claims." 42 U.S.C. § 1997e(c)(1) & (2).  Congress's use of the word "claims" in subsection (c)(2) indicates that "claims" are individual allegations and "actions" are entire lawsuits.  *See Ross*, 365 F.3d at 1190 ("To start, the language in § 1997(a) itself suggests a requirement of total exhaustion because it prohibits an 'action' (as opposed to merely preventing a 'claim') from proceeding until administrative remedies are exhausted."); *see also Smeltzer*, 235 F. Supp. 2d at 744.

Furthermore, reading subsection (a) and subsection (c)(2) together demonstrate that Congress intended for "action" to mean "suit."  If a district court is presented with a "mixed" petition, it has the power under subsection (c)(2) to dismiss any frivolous claims, exhausted or not, *with prejudice*.  However, dismissal under subsection (a) allows the court to dismiss the entire action *without prejudice*.  The *Smeltzer* court recognized that Congress must have intended that courts could use subsection (c)(2) to dismiss unexhausted claims as frivolous to keep them from "holding up" the others. *Smeltzer*, 235 F. Supp. 2d at 744.  In the alternative, the court could dismiss the entire action without prejudice and allow the prisoner to re-file only exhausted claims.

The policies underlying the PLRA also suggest that Congress intended the courts to apply total exhaustion to a prisoner's petition.  One purpose of the act is to reduce the sheer number of prisoner suits, especially frivolous actions. *See Ortiz*, 380 F.3d at 658 (citing 141 Cong. Rec. 26,553 (1995) (statement of Sen. Hatch)).  Congress also intended to give increased powers to prisons so that they could solve their problems according to their own internal dispute resolution systems. *See Alexander v. Hawk*, 159 F.3d 1321, 1326 n.11 (11th Cir. 1998) (citing 141 Cong. Rec. S14408-01, S417748) (Sept. 27, 1995)).  "In the PLRA context, a total exhaustion rule would encourage prisoners to make full use of inmate grievance procedures and thus give prison officials the opportunity to resolve prisoner complaints." *Ross*, 365 F.3d at 1190.  When the courts dismiss the actions without prejudice, prisons would have the opportunity to fully resolve the complaint.  If the complaint cannot be resolved within the prison, the prisoner could file an action in court with a complete "administrative record that would ultimately assist federal courts in addressing the prisoner's claims." *Id.*; *see also Rivera v. Whitman*, 161 F. Supp. 2d 337, 341-42 (D.N.J. 2001).

Additionally, adopting the total exhaustion rule creates comity between § 1983 claims and habeas corpus claims.  The Supreme Court requires total exhaustion in habeas cases to allow state courts the first opportunity to solve prisoners' cases because they are arguably in a better position

---

However, it allowed the plaintiff to cure his complaint by deleting unexhausted claims. *Id.* at 1144.

to analyze and solve the problems. *See Preiser v. Rodriguez*, 411 U.S. 475, 492 (1973). The PLRA, too, was enacted to allow state prison systems the first chance to solve problems relating to prison conditions. Because both bodies of law were created for similar reasons, their exhaustion rules should be interpreted in a similar manner.[6]

Courts which have not applied the total exhaustion rule claim that there is little similarity between habeas petitions and § 1983 actions. These courts note that total exhaustion is required in the habeas context out of a need for state sovereignty. *See Ortiz*, 380 F.3d at 660; *Jenkins*, 32 F. Supp. 2d at 957. However, these courts fail to recognize that while state courts have an interest in resolving habeas cases, state prison systems have a similar interest in resolving cases involving their own institutions. This circuit has already noted the similarities between habeas petitions and § 1983 claims. In *Brown v. Toombs*, we noted: "The [PLRA] has extensive benefits. It recognizes that it is difficult to explain why we require full exhaustion in habeas corpus cases involving life and liberty, but allow direct access in prison rights cases under § 1983." 139 F.3d at 1103. Because we recognize the correlation between habeas petitions and § 1983 actions, we find it appropriate to interpret the PLRA exhaustion requirements in light of habeas corpus rules.[7]

Adoption of the total exhaustion rule would also deter prisoners from bringing additional, piecemeal litigation. *See Ross*, 365 F.3d at 1190. A prisoner whose mixed complaint was dismissed by the district court would be left with two options. First, he could wait until all of his claims are exhausted and re-file the action at that time. Or, he could simply institute an action with only the exhausted claims, and then later bring other actions in court after the other issues have been fully addressed through the prison grievance process. While it is true that re-filing an action would require an additional filing fee, we reject the notion that this rule is "unduly punitive," because it does not prevent the prisoner from proceeding *in forma pauperis*. *Contra Jenkins v. Toombs*, 32 F. Supp. 2d at 959. Under the total exhaustion rule, a prisoner will have the choice of bringing forth each exhausted claim one at a time, at a potentially greater expense to himself, or to wait and bring all exhausted claims together in one action.

Furthermore, we reject the notion that the total exhaustion rule would create additional, rather than fewer, prisoner lawsuits. *Contra Ortiz*, 380 F.3d at 658 (noting that "such a regimen would create an incentive for prisoners to file section 1983 claims, if they have more than one, in more than one lawsuit"). Even the *Ortiz* court recognized that there are significant procedural rules in place that would encourage bringing all exhausted claims in one action, rather than filing separate actions for each individual claim. *See id*. at 658 n.7. The most obvious deterrent is the filing fee.

---

[6] The dissent cites *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1246 (2005), to show that habeas corpus and § 1983 cases are "inherently different." It quotes that "habeas corpus actions require a petitioner fully to exhaust state remedies which § 1983 does not." *Id.* While this statement is true, exhaustion is still required in prisoner § 1983 cases, only the exhaustion must occur within the prison system. Furthermore, the Court's discussion of habeas corpus and § 1983 claims does not suggest drawing comparisons between the two cases is inappropriate, only that the procedures were created for hearing distinct types of claims. *Id.* at 1246-49.

[7] The dissent also notes that drawing comparisons between habeas corpus and § 1983 cases is inappropriate in light of the recent case of *Rhines v. Weber*, 125 S. Ct. 1528 (2005). In *Rhines*, the Court held that, in certain circumstances, a district court may stay a habeas case until all of the prisoner's claims are exhausted. *Id.* at 1535-36. This case did not, however, eliminate or lessen the "total exhaustion" requirement. *Id.* at 1533. Because we are not dealing with a case in which the district court stayed the proceedings pending exhaustion, we decline to address the applicability of *Rhines* to § 1983 cases.

However, the "three strikes" rule, codified in 28 U.S.C. § 1915(g), creates an additional incentive for prisoners to join all of their issues in one action.[8]

Finally, we believe that the total exhaustion rule could be easily administered by the district courts. As noted in *Ross*, this rule "would relieve district courts of the duty to determine whether certain exhausted claims are severable from other unexhausted claims that they are required to dismiss." 365 F.3d at 1190 (citing *Rose v. Lundy*, 455 U.S. 509, 519 (1982)). The district courts would simply apply the familiar rule from the habeas context to § 1983 claims. Furthermore, prisoners who are well acquainted with this rule in the habeas context should "be expected to adhere to this straightforward exhaustion requirement" in the § 1983 context. *Id.*

For the reasons stated above, we now adopt the total exhaustion rule and we **REVERSE** and **REMAND** this case to the district court to dismiss Jones Bey's petition without prejudice.[9]

---

[8] Under this statute, a prisoner who files an action *in forma paupris* receives a "strike" if the action is "frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id.* Once the prisoner accrues three "strikes," that prisoner is barred from proceeding *in forma pauperis* in any additional § 1983 action. Although the prisoner is not totally barred from filing claims in court, he must now do so at his own expense.

[9] Jones Bey alternatively argues that he did exhaust his administrative remedies, but his attempts at exhaustion were frustrated by Twierweiler. Although exhaustion is mandatory, *see Thomas v. Woolum*, 337 F.3d 720, 725 (6th Cir. 2003), prison officials do not have to affirmatively provide information on how to proceed with individual claims. *Brock v. Kenton County*, 2004 WL 603929, at *3 (6th Cir. Mar. 23, 2004).

We recently held that when a prison "totally fail[s] to respond to [a] grievance," that grievance should be considered exhausted for the purposes of § 1997e(a). *Boyd v. Corrections Corporation of America*, 380 F.3d 989, 996 (6th Cir. 2004). The prisoner in *Boyd* submitted evidence that he filed a grievance, that the grievance was delivered to the appropriate office, and that the officials did not respond. *Id.* Even under this rule, Jones Bey cannot show that he exhausted his administrative remedies. Although he presents evidence that he started the process and even wrote letters inquiring on the status of his grievances, he has not proven that the grievance was appropriately delivered to the correct office. Thus, Jones Bey's case can be distinguished from the plaintiff in *Boyd*.

Furthermore, Jones Bey's reliance on *Thomas v. Woolum*, 337 F.3d 720 (6th Cir. 2003), is misplaced. *Thomas* requires a prisoner to exhaust his administrative remedies, even if those remedies are no longer timely. *Id.* at 727. As evidenced by his brief and some of his other grievances, he understood the need to exhaust futile claims, including those that were untimely. For these reasons, Jones Bey cannot prove that administrative remedies were unavailable to him.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

CLAY, Circuit Judge, concurring in part and dissenting in part. While I join, in part, the majority's ultimate conclusion– that Jones-Bey's First Amendment retaliation claim against Defendant Johnson must be dismissed without prejudice for failure to exhaust administrative remedies– I believe that the majority's failed attempt to apply a total exhaustion rule is foreclosed by our prior decision in *Hartsfield v. Vidor*, 199 F.3d 305 (6th Cir. 1999). Although I respectfully dissent from the exhaustion holding reached by my colleagues, I am not sure that a dissent is actually necessary because the majority's decision constitutes a nullity to the extent that it conflicts with *Hartsfield*.

In *Hartsfield*, this Court confronted exactly the same situation that we face today– and reached the opposite conclusion. The prisoner-plaintiff in *Hartsfield* filed a complaint with various claims against multiple defendants, some of which were exhausted and some of which were not. We held that the unexhausted claims must be dismissed; however, we permitted the exhausted claims to move forward and be resolved on the merits. *Id.* at 309. *Hartsfield* is a binding opinion in this Circuit, and it has been correctly cited in a number of our unpublished decisions as holding that "[if] a complaint contains exhausted and unexhausted claims, the district court may address the merits of the exhausted claims and dismiss only those that are unexhausted." *Williams v. McGinnis*, 234 F.3d 1271, 2000 WL 1679471 at **2 (6th Cir. 2000) (citing *Hartsfield*, 199 F.3d at 309); *accord Fisher v. Wickstrom*, 230 F.3d 1358, 2000 WL 1477232 at **1 (6th Cir. 2000); *McElhaney v. Elo*, 230 F.3d 1358, 2000 WL 1477498 at **3 (6th Cir. 2000); *Wash v. Rout*, 215 F.3d 1328, 2000 WL 658925 at **1 (6th Cir. 2000); *Riley v. Richards*, 210 F.3d 372, 2000 WL 332013 at **2 (6th Cir. 2000). Additionally, even if one were to argue that *Hartsfield* did not expressly hold that a partial exhaustion rule applies, the *Hartsfield* panel indisputably could not have decided the case in the way that it did if total exhaustion was required. Thus, *Hartsfield* definitively foreclosed the application of the total exhaustion rule in this Circuit.

The majority completely ignores *Hartsfield*'s import, instead relying on our subsequent opinion in *Knuckles El v. Toombs*, in which we purported to "reserve for another day" the question of whether exhausted claims in a 'mixed' complaint may move forward. *See* 215 F.3d 640, 642 (6th Cir. 2000). However, the majority's reliance on *Knuckles El* is misplaced; *Knuckles El* failed to even cite to *Hartsfield*, and thus it incorrectly described the state of PLRA exhaustion in this Circuit. The question *Knuckles El* claimed to leave open was not an open question at all; it had already been answered in *Hartsfield*. Furthermore, because *Hartsfield* was decided first, subsequent panels are required to follow it under 6TH CIR. R. 206(c), which mandates that "[r]eported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court en banc consideration is required to overrule a published opinion of the court." *See United States v. Davis*, 397 F.3d 340, 350 n.7 (6th Cir. 2005) (citing Rule 206(c)); *Valentine v. Francis*, 270 F.3d 1032, 1035 (6th Cir. 2001) (same). Because we are bound by *Hartsfield* unless and until the *en banc* court holds otherwise, the majority's contrary opinion is not the controlling law in the Sixth Circuit, and should not be followed by future panels of this Court.

The majority feebly attempts to disclaim the precedential value of *Hartsfield* by noting that the same judge authored both *Hartsfield* and *Knuckles-El*, and that I sat on the *Knuckles-El* panel; however, these facts are of no consequence whatsoever. Regardless of its author or panel membership, it is clear that *Knuckles-El* incorrectly construed the state of exhaustion law in this Court by improperly ignoring precedent. In addition, the majority's suggestion that *Hartsfield* was unclear is undermined by the fact that numerous panels properly construed *Hartsfield* both before and after the issuance of *Knuckles-El*. *See*, *e.g.*, *Williams*, 2000 WL 1679471 (decided after

*Knuckles-El*); *Fisher*, 2000 WL 1477232 (same); *McElhaney*, 2000 WL 1477498 (same); *Wash*, 2000 WL 658925 (decided before *Knuckles-El*); *Riley*, 2000 WL 332013 (same).[1] Instead of acknowledging that *Knuckles-El* mistakenly overlooked precedent, the majority condemns itself to repeat the mistake by once again misconstruing *Hartsfield*.

Notwithstanding the fact that the majority's holding ignores the principle of *stare decisis*, its reliance on the PLRA's language to apply the total exhaustion rule is unpersuasive. While it is true that § 1997e(a) states that no "action" shall be brought as opposed to no "claim," "it [does not] follow[] that the only possible response to the impermissibility of the bringing of the action is to dismiss it in its entirety– to kill it rather than to cure it." *Ortiz v. McBride*, 380 F.3d 649, 657 (2d Cir. 2004). The text of § 1997e(a) is far "'too ambiguous' to sustain the conclusion that Congress intended" for a total exhaustion rule to be applied. *Id* at 657-58 (quoting *Rose v. Lundy*, 455 U.S. 509, 516 (1982)); *see also Henderson v. Sebastian*, No. 04-C-0039-C, 2004 WL 1946398 at *6 (W.D. Wis. Aug. 25, 2004) (quoting *Alexander v. Davis*, 282 F. Supp. 2d 609, 610 (W.D. Mich. 2003)) (noting that "courts have characterized this linguistic interpretation as a 'thin reed' on which to base such a weighty conclusion"). It is precisely because of this ambiguity that the majority must necessarily perform a gymnastic interpretation of other subsections of the statute in order to reach its conclusion that Congress "intended" total exhaustion.

The majority's discussion of § 1997e(c) is entirely unhelpful, inasmuch as that section appears to use the term 'action' "interchangeably with 'claim.'" *Henderson*, 2004 WL 1946398 at *6. Additionally, applying the tenet of statutory construction "that similar language contained within the same statute must be accorded a consistent meaning," *National Credit Union Administration v. First National Bank and Trust Co.*, 522 U.S. 479, 501 (1998), under a total exhaustion regime the application of a consistent meaning to "action" in § 1997e(a) and (c)(1) renders subsection (c)(2) superfluous. Section 1997e(c)(1) states that a court shall "dismiss any *action* brought . . . if the court is satisfied that the *action* is frivolous, malicious," etc., while § 1997e(c)(2) states that "[i]n the event that a *claim* is, on its face, frivolous, malicious," etc., "the court may dismiss the underlying *claim* without first requiring the exhaustion of administrative remedies." In order to be consistent, a court "would be required to dismiss a prisoner's entire complaint [under subsection (c)(1)] if any of the claims therein were found to be frivolous or insufficient to justify relief." *Jenkins v. Toombs*, 32 F. Supp. 2d 955, 958 (W.D. Mich. 1999). However, if subsection (c)(1) requires dismissal of an action for frivolousness, then subsection (c)(2)'s reference to dismissal of frivolous claims would be entirely unnecessary. *Id.*; *accord Hubbard v. Thakur*, 344 F. Supp. 2d 549, 555-56 (E.D. Mich. 2004).

Because the statutory language does not unambiguously require total exhaustion, the majority turns its discussion to the purposes behind the PLRA. It is undisputed that "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524 (2002). However, the purposes underlying the statute are better served by a partial exhaustion rule than by the total exhaustion rule advocated by the majority. There is a danger that rather than lessening the number of suits filed, the total exhaustion rule will increase piecemeal litigation by encouraging prisoners to file additional § 1983 lawsuits. *See Ortiz*, 380 F.3d at 658 (holding that it is "doubtful" that dismissing actions rather than individual claims "will do more than require plaintiffs who bring 'mixed' actions to refile their claims with the claims that were held by the district court to be unexhausted simply omitted."). In other words, "prisoners are likely to simply amend their complaints to eliminate the unexhausted claims and refile," leaving the district court "with exactly the same claims that could have been resolved at the outset." *Jenkins v. Toombs*, 32 F. Supp. 2d 955, 959 (W.D. Mich. 1999). Consequently, the partial exhaustion rule is more efficient, and thus more in line with the purposes of the PLRA, than the total exhaustion rule the

---

[1]Furthermore, the author of the majority opinion in the instant case sat on the panel in *Wash*.

majority seeks to adopt. In addition, regardless of whether total or partial exhaustion is applied, prisoners are still required to fully exhaust any claims they wish to press in federal court, and district courts are clearly barred from resolving any grievances which have not been submitted to prison officials. *See Booth v. Churner*, 532 U.S. 731 (2001); *Curry v. Scott*, 249 F.3d 493, 501 (6th Cir. 2001); *see also Ortiz*, 380 F.3d at 661 ("[A] rule permitting the dismissal of unexhausted claims does indeed defer to state administrative proceedings by insisting that prison administrators adjudicate each prisoner's section 1983 claim in the first instance."). Finally, prisoners already have an incentive not to file multiple lawsuits because of multiple filing fees and 28 U.S.C. § 1915(g)'s 'three strikes' rule, which bars a prisoner who has filed three previous frivolous or meritless suits from proceeding *in forma pauperis* in subsequent suits. *See Wilson v. Yaklich*, 148 F.3d 596, 602 (6th Cir. 1998).

Further rebutting the claim that total exhaustion spares district courts from determining which claims are exhausted and which are unexhausted, the Second Circuit has noted that prisoners' suits often present challenging exhaustion questions that must be resolved at the outset of the litigation, regardless of whether the court ultimately applies a total or a partial exhaustion rule. In such situations, "the district court must first familiarize itself with the case and hear the positions of the parties in order to decide the exhaustion issue as a preliminary matter." *Ortiz*, 380 F.3d at 659. Once the district court has expended time determining whether claims have been exhausted "[i]t hardly seems to aid efficiency to require that . . . it must dismiss any remaining exhausted claims only to allow the same case, absent the unexhausted claims, to be reinstituted, heard again on the exhausted issues, and then decided." *Id.* Once again, partial exhaustion is the more efficient approach.

Additionally, the majority's comparison of prisoner civil rights litigation to habeas corpus is completely inappropriate in light of clear Supreme Court precedent. Whereas habeas exhaustion "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings," no such parallel exists in the PLRA context. *Rose*, 455 U.S. at 518; *see also Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973) ("The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity."). The Supreme Court has repeatedly contrasted and distinguished habeas actions from § 1983 actions, very recently noting that "habeas corpus actions require a petitioner fully to exhaust state remedies which § 1983 does not." *See Wilkinson v. Dotson*, 125 S. Ct. 1242, 1246 (2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 490-91 (1973); *Patsy v. Bd. of Regents*, 457 U.S. 496, 507 (1982)); *see also Edwards v. Balisok*, 520 U.S. 641, 649 (1997); *Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994). In *Wilkinson*, the Court found that unlike habeas, which has clear comity concerns that require a petitioner to press his or her claims in state court, in § 1983 suits "the competing need to vindicate federal rights without exhaustion" allows "prisoners [to] bring their claims without fully exhausting state-court remedies." *Id.* The Court also noted the PLRA's general requirement that state administrative remedies be exhausted, however, it is clear from *Wilkinson*'s discussion of § 1983 and habeas that these two types of actions are inherently different. *Id.* at 1246-49 (discussing line of cases from *Preiser* to *Edwards* in which the Court distinguished habeas actions from § 1983 suits). The majority's attempt to draw parallels between the PLRA and habeas is entirely misplaced and completely unsupportable under clear Supreme Court precedent.[2]

Furthermore, unlike the state courts that review habeas petitions, "prison administrators generally limit their review to determining whether prison policy has been violated." *Jenkins*, 32

---

[2]Notwithstanding my belief that habeas exhaustion provides an extremely poor analogy to PLRA exhaustion, it should be noted that in another recently decided case, the Supreme Court modified the total exhaustion rule of *Rose v. Lundy* to hold that when confronted with a "mixed" habeas petition, a federal district court has limited discretion to stay the petitioner's exhausted claims while he or she exhausts the unexhausted claims in state court. *See Rhines v. Weber*, 125 S. Ct. 1528 (2005).

F. Supp. 2d at 959 (quoted in *Ortiz*, 380 F.3d at 660)). Prison officials are not equipped to review complex legal claims, and unlike state court proceedings, prison administrative review of grievances is not conducted under the rules of evidence or other judicial procedures "employed by courts of law in an attempt to assure accurate fact-finding." *Ortiz*, 380 F.3d at 660. For those reasons, prison administrative proceedings are highly unlikely to create the sort of complete factual record contemplated by the majority. One need not look any further than the record in this case: the individual issues that Jones-Bey fully grieved with prison officials do not present a better administrative record than the ones that he only grieved through step one; for each fully grieved complaint, the record of step three review merely consists of brief, conclusory statements indicating that the review at steps one and two adequately addressed the problem, and that prison policy had not been violated and/or Jones-Bey did not presented a grievable claim. These statements have been entirely unhelpful in reviewing this case, and in no way are they comparable to a state court decision.

The majority's flimsy comparison of habeas and prisoner civil rights litigation is also dubious when one considers that habeas petitions "are usually about a singular event– the petitioner's conviction in state court." *Ortiz*, 380 F.3d at 661. By contrast, prisoner civil rights suits "routinely seek to address more than one grievance– sometimes a laundry list of grievances– relating to different events or circumstances." *Id.*; *see also Jenkins*, 32 F. Supp. 2d at 959 (noting that the prisoner-plaintiff's claims "range from allegations of general discrimination against black Jewish prisoners to improper handling of his food"). In the instant case, for example, Jones-Bey claims that Defendant Johnson repeatedly retaliated against him for exercising his First Amendment rights, and on one occasion used excessive force against him in violation of the Eighth Amendment; however, Jones-Bey also has an unrelated claim alleging that Defendant Trierweiler mishandled some of his grievances. The claims against Johnson and Trierweiler are not about a singular event, or a related series of events, and the majority has not presented any compelling reason to explain why the failure to exhaust the claims against Johnson requires the dismissal of the exhausted claim against Trierweiler.

Finally, I disagree with the majority's conclusion that total exhaustion is not unduly punitive because prisoners may still proceed *in forma pauperis*. Title 28 U.S.C. § 1915(b)(1) requires prisoners filing *in forma pauperis* to "pay the full amount of a filing fee" to refile exhausted claims; thus, despite the possibility of proceeding *in forma pauperis*, requiring the prisoner to refile may still "'amount to nothing more than a monetary penalty against the prisoner.'" *Blackmon v. Crawford*, 305 F. Supp. 2d 1174, 1180 (D. Nev. 2004) (quoting *Scott v. Gardner*, 287 F. Supp. 2d 477, 488 (S.D.N.Y. 2003)); *see also Jenkins*, 32 F. Supp. 2d at 959. "Although additional filing fees may prove a disincentive from bringing a mixed petition in theory," it is likely that "such incentives will have little effect because many prisoners do not understand the exhaustion rule in the first place." *Blackmon*, 305 F. Supp. 2d at 1180. Further, the majority's suggestion that prisoners engage in a conscious cost-benefit analysis or "choice" of when to bring exhausted claims is belied by the fact that many, if not most, *pro se* prisoners have little or no education, resources or understanding of complex legal principles such as the exhaustion of administrative remedies. *Cf. id.* (noting that "*pro se* prisoners cannot be held to understand the consequences of the 'total exhaustion' rule when the federal courts are so widely split on whether or not it even applies"). In practice, the total exhaustion rule is not only likely to amount to a monetary penalty, it is also likely to be a convenient means for district courts to expediently close the courthouse door to *pro se* prisoner litigants, without proper regard for the merits of their claims or consideration of their status. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)) ("[A] pro se complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'"); *Burton v. Jones*, 321 F.3d 569, (6th Cir. 2003) ("A handwritten pro se complaint should be liberally construed."); FED. R. CIV. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").

Because the total exhaustion rule directly conflicts with our prior, published opinion in *Hartsfield*, I respectfully dissent from the majority's failed attempt to adopt such a rule. Moreover, the total exhaustion rule is ill-advised, and it fails to serve the efficiency purposes behind the PLRA as well the partial exhaustion rule. However, because Jones-Bey failed to exhaust his administrative remedies relating to the First Amendment retaliation claim against Defendant Johnson, I agree with the majority that the claim should be dismissed without prejudice.