NOT RECOMMENDED FOR PUBLICATION
File Name: 06a0200n.06
Filed: March 27, 2006

No. 04-2218

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TERRY PACK,                                    )
                                               )
    Plaintiff-Appellant,                       )
                                               )
v.                                             )    ON APPEAL FROM THE UNITED
                                               )    STATES DISTRICT COURT FOR
                                               )    THE EASTERN DISTRICT OF
BILL MARTIN, WARDEN, et al.,                   )    MICHIGAN
                                               )
    Defendants-Appellees.                      )

Before: SILER and CLAY, Circuit Judges; CARR, District Judge.[*]

**SILER**, Circuit Judge. Plaintiff Terry Pack, a *pro se* Michigan prisoner, appeals the district

court's judgment dismissing his action under 42 U.S.C. §1983. Pack's complaint alleged various

violations of his constitutional rights by prison officials relating to injuries he sustained while

performing kitchen work within the prison. Each defendant moved to dismiss for failure to exhaust

administrative remedies as required by 42 U.S.C. § 1997e and for failure to state a claim. The

district court granted motions to dismiss as to all defendants. We **AFFIRM**.

BACKGROUND

In 2000, Pack was working as a cook in the Ryan Correctional Facility kitchen and suffered

second and third degree burns while attempting to drain hot hamburger meat. He complains that his

---

[*]The Honorable James G. Carr, United States District Judge for the Northern District of
Ohio, sitting by designation.

Eighth and Fourteenth Amendment rights were violated by Michigan Department of Corrections (MDOC) officials for denying him proper medical treatment after his injuries were sustained. This argument appears to rely on facts indicating that at times, Pack disagreed with the type and/or amount of medical treatment provided by MDOC officials. He also claims his Eighth and Fourteenth Amendment rights were violated by MDOC officials for creating an unsafe work environment. Finally, he complains that officials retaliated against him in violation of the First Amendment by terminating him from his prison job.

The magistrate judge recommended dismissal of the MDOC defendants, and the district court adopted the recommendation, dismissing all defendants.

## ANALYSIS

Pack appeals the district court's decision on the grounds listed hereafter.

### 1. Failure to State a Claim

This court reviews *de novo* a district court's dismissal of an action for failure to state a claim. Dismissal is appropriate if the complaint fails to set forth an allegation of a required element of a claim. *Craighead v. E.F. Hutton & Co.*, 899 F.3d 485, 489-90 (6th Cir. 1990). Although *pro se* complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), it is well-established that "conclusory, unsupported allegations of constitutional deprivation do not state a claim." *Ana Leon T. v. Fed. Res. Bank*, 823 F.2d 928, 930 (6th Cir. 1987).

In order to state a valid claim under the Eighth Amendment or 42 U.S.C. § 1983, a plaintiff must, at the least, state facts alleging that a defendant, acting under color of state law, displayed

deliberate indifference for his constitutional rights, for a serious medical need, or for some other federally protected right. *See Gomez v. Toledo*, 446 U.S. 635, 639-41 (1980).

Pack fails to state with specificity a set of facts that give rise to an Eighth Amendment or a § 1983 claim. Nowhere in his complaint or briefs to this court did Pack proffer more than "conclusory, unsupported allegations" of wrongdoing by defendants. Because no claims have been established, the district court's dismissal was appropriate.

Even assuming that Pack stated sufficient facts to establish an Eighth Amendment or § 1983 claim, such facts would not give rise to an Eighth Amendment or other constitutional violation. If an Eighth Amendment claim is based on official acts other than criminal penalties, the offending acts must reflect an "unnecessary and wanton infliction of pain" to fall within the ambit of prohibited conduct. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Such a claim encompasses both an objective and subjective component. The objective component requires that the pain be sufficiently serious and in contravention of contemporary standards of decency. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The subjective component requires the plaintiff to prove that prison officials had "a sufficiently culpable state of mind." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To be sufficiently culpable, the official must know of and disregard an excessive risk to the prisoner's health or safety. *Id.* Deliberate indifference should establish the wantonness necessary to satisfy the subjective component. *Farmer*, 511 U.S. at 836.

The party asserting a claim that medical care received was lacking or inadequate bears the burden of proving that the decision to provide no, or substandard, medical care was deliberate or "knowing." *Bargery*, 207 F.3d at 867. Whatever a searching review of materials provided by Pack

on appeal might reveal about the relative judgments of prison officials in administering his post-injury medical care, well-pled evidence that would satisfy this burden is not provided.

A similar analysis, applied to Pack's First Amendment retaliation claim, suggests affirmance of the district court's dismissal for failure to state a claim. To establish a First Amendment retaliation claim, Pack is required to prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in such conduct; and (3) there is a causal connection between the adverse action and his protected conduct. *Mohammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004). Although Count 16 of his Complaint states that "[t]he prison retaliated against Pack," Pack fails to allege both a set of facts that would support a claim of First Amendment retaliation and a causal connection necessary to satisfy this court's test for retaliation claims.

## 2. Failure to Exhaust Administrative Remedies

This court reviews *de novo* a district court's dismissal of an action for failure to exhaust administrative remedies. *Curry v. Scott*, 249 F.3d 493, 503 (6th Cir. 2001).

The Prisoner's Litigation Reform Act (PLRA) requires a prisoner to exhaust all internal administrative remedies before filing suit under § 1983. 42 U.S.C. § 1997e(a); *see Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). Exhaustion is mandatory. *See* 42 U.S.C.§ 1997e(a) ("No action shall be brought . . . by a prisoner . . . until such administrative remedies as are available are exhausted"). The prisoner has the burden of demonstrating that he has exhausted these remedies. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). To satisfy this statutory requirement, a prisoner should attach a copy of applicable administrative decisions to his complaint or "describe

with specificity the administrative proceeding and its outcome in order to satisfy his burden of proof on this requirement." *Knuckles El*, 215 F.3d at 642 (footnote omitted). If a court is satisfied that an action fails to state a claim upon which relief can be granted, the court may dismiss the action without first requiring the exhaustion of such remedies. 42 U.S.C. § 1997e(c)(2).

Pack failed to attach to his complaint copies of such administrative decisions demonstrating exhaustion. He also failed to describe with specificity the administrative proceedings and their outcomes in order to demonstrate exhaustion of his claims. He argues that because he made an effort to exhaust (some of) his grievances by appealing them through the Michigan Department of Corrections Grievance Procedure Steps 1, 2, and 3, he has satisfied the PLRA despite "frustration" of his grievances by prison officials. Yet Pack fails to explain how and why prison officials "frustrated" his internal administrative appeals process; importantly, he failed to explain such conduct in his complaint. On these grounds, the district court's order dismissing Pack's claims for failure to exhaust should be affirmed.

Even assuming that Pack did exhaust his internal administrative procedures, the district court may still dismiss a claim, without requiring exhaustion, for failure to state a claim upon which relief can be granted. Because Pack failed to state a claim, dismissal of his action was proper nonetheless.

### 3. District Court's Review of Recommendation

We review a district court's consideration of a magistrate judge's recommendation of dismissal of an action for failure to exhaust administrative remedies *de novo*. *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993); *see also* 28 U.S.C. §636(b)(1)(C). Therefore, Pack's final claim of error necessarily fails.

No. 04-2218
Pack v. Martin

**AFFIRMED.**

**CLAY, Circuit Judge, concurring in part and dissenting in part.** I concur in the majority's judgment insofar as it affirms the district court's dismissal of Plaintiff's claims against Respondents Valley, Williamson, Thomas, Brown, Butler, Reed, Pasard, Short, Martin, Mustafa, Deputy Smith, Barbee, Behrman, O'Brien, Freed, Tate, Sermo, Jamrog, Bell, Klee, Oswalt, Butts, Epps, Franklin, Gladis, Roggnabuck, Dr. Barbara Smith and Detroit Receiving Hospital. I dissent from the remainder of the majority's judgment, however, because Plaintiff both exhausted the prison grievance procedures and stated a claim for relief as to Respondents Johnson, Nobles, Correctional Medical Services, Inc. ("CMS"), and Metzmaker. I would therefore **REVERSE** the portion of the district court's order dismissing Plaintiff's claims against Respondents Johnson, Nobles, CMS, and Metzmaker.

## I.
## BACKGROUND

The case arises out of an accident that occurred on May 5, 2001 at Ryan Correctional Facility ("RCF"). Plaintiff, an inmate of RCF, was working in the kitchen preparing dinner. He encountered difficulty straining grease from hamburger meat and unplugged the kettle to facilitate drainage in a manner RCF staff allegedly instructed inmates to use. While unplugging the kettle, grease spurted out and hit Plaintiff's hands burning through his rubber gloves. Because of his burnt hand and a broken handle, Plaintiff was unable to close the kettle valve. Plaintiff backed away from the kettle to avoid the grease. While backing away he hit a table and fell to the ground. Several gallons of boiling "grease water" landed on Plaintiff causing second and third degree burns. Plaintiff was trapped between two tables and unable to get off the floor because it was too slippery.

He alleges that he screamed for help but that no supervisory staff came. Eventually, another inmate, Larry Anthony, helped Plaintiff off the floor and Plaintiff went to RCF's Health Services.

From Health Services, Plaintiff was rushed to Detroit Receiving Hospital's ("DRH") emergency room where DRH doctors treated him. According to Plaintiff, the doctors refused to allow him to remain at the hospital despite being informed by RCF transport officers that RCF would be unable to adequately care for Plaintiff's burns. Thus, Plaintiff returned to RCF that same evening, where RCF nurses informed him that the prison's doctor was on vacation and that there was no doctor at RCF to treat Plaintiff. Thereafter, the nurses sent Plaintiff back to his prison cell.

The next morning, Plaintiff awoke in severe pain. Resident Unit Officer Ponzo called for emergency medical assistance but no prison officials responded. Eventually, Plaintiff was forced to find his way back to Health Services. Plaintiff informed the nurses at Health Services that he was in severe pain. Additionally, he informed the nurses that his that Food Services was not feeding him the special diet prescribed by the doctors. The nurses again rushed him to DRH.

DRH again released Plaintiff and sent him back to RCF. At RCF, Plaintiff requested the pain medication, Vicaden, prescribed by the DRH doctors. A prison nurse informed Plaintiff that there was no doctor available to fill the prescription. Instead, she gave him motrin and sent him back to his cell where he was forced to use the general prison population's facilities with open wounds.

In an attempt to remedy the situation, Plaintiff contacted family members and his former appeal attorney, Susan Meinberg. Susan Meinberg contacted the Health Care Supervisor at RCF. On June 12, 2000, RCF officials sent Plaintiff to DRH's outpatient treatment center. Because Plaintiff continued to have problems, on July 31, 2000, Plaintiff filed grievance RRF-00-0701406-

12Z, alleging that numerous prison officials were denying him proper medical treatment. In particular, the grievance named RCF's deputy warden, Johnson, RCF's assistant deputy warden, Nobles and CMS, RCF's contract provider of medical services. RCF denied the grievance and Plaintiff appealed it all the way through the Michigan Department of Corrections three tier process, eventually receiving a denial of his grievance at stage III.

On May 9, 2001, Plaintiff was transferred from RCF to Gus Harrison Facility (GHF). Plaintiff continued to have problems and continued to file grievances at GHF. According to Plaintiff, a GHF Resident Unit Manager, Metzmaker, asked him to "sign off" on several of the grievances that he filed. When Plaintiff refused to withdraw his grievances, Metzmaker placed him in "lock up." Only July 31, 2001, Plaintiff filed grievance ARF 01-06-01137-12c4 complaining of Metzmaker's behavior. The local prison authorities denied the grievances at stages I and II and Petitioner mailed a stage III appeal to the central prison authority in Lansing. Petitioner claims that he never received a response to this stage III appeal, but submitted a letter from GHF's librarian indicating that he mailed the appeal to Lansing.

## II.
## DISCUSSION

### A.      Standard of Review

This Court reviews a district court's dismissal of a prisoner's § 1983 action for failure to exhaust administrative remedies and for failure to state a claim *de novo*. *Harbin-Rey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005); *Boyd v. Corrections Corp. of Am.*, 380 F.3d 989, 993 (6th Cir. 2004). "In determining whether a prisoner has failed to state a claim, we construe his complaint in the light most favorable to him, accept his factual allegations as true, and determine whether he can prove

any set of facts that would entitle him to relief." *Harbin-Rey*, 420 F.3d at 575. Additionally, this Court construes a *pro se* plaintiff's complaint liberally, *Lillard v. Shelby Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996), in order to do justice to both parties.

**B.      Exhaustion Under § 1997e of the PLRA**

### 1.      Legal Framework

Section 1997e of the PLRA mandates that inmates at correctional facilities exhaust available administrative remedies before filing suit over "prison conditions" in federal court. The PLRA's exhaustion requirement is not discretionary and admits no exceptions. *Porter v. Nussle*, 534 U.S. 516 (2002). This Court has interpreted the PLRA's exhaustion requirement to be satisfied if a Plaintiff files a grievance granting the prison "fair notice" of the claim and appeals the denial of the grievance to the highest possible level. *Burton*, 321 F.3d at 575; *see also Thomas v. Woolum*, 337 F.3d 720, 727, 733 (6th Cir. 2003). To give fair notice of a claim, a plaintiff must allege specific acts of mistreatment or misconduct and identify the responsible party. *Burton*, 321 F.3d at 575. In the Michigan grievance system, a defendant must be identified at stage I of the grievance proceedings to be properly exhausted. *Id.* at 574. If a plaintiff does not know the responsible party's name, the plaintiff must give sufficient information to allow the prison to identify the party. *See Thomas*, 337 F.3d at 734. The fair notice standard, however, does not require a prisoner to allege "a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton*, 321 F.3d at 575. Nor does it require a plaintiff to comply with the prison's time limits for filing claims. *Thomas*, 337 F.3d at 734 As this Court explained in *Thomas*, under the fair notice standard the prison must have the opportunity to resolve a plaintiff's problems; however, if

the prison declines to address the problems for procedural reasons the plaintiff should not be penalized. *Id.*

Moreover, the PLRA only requires exhaustion of *available* remedies. While this requires plaintiffs to use grievance procedures even where they believe the procedure to be ineffectual or futile, it does not require a plaintiff to use remedies not reasonably available. *See Boyd,* 380 F.3d at 998. Thus, this Court has held that where a plaintiff files a formal written grievance and does not receive a timely response, that plaintiff has exhausted all available remedies. *Id.* at 996. A plaintiff is not expected to appeal a grievance to which he has not received a response and it is not the plaintiff's burden to continually inquire after a properly filed grievance. *Id.*

Where a plaintiff exhausts his remedies as to one Respondent but not as to another, in a so-called mixed petition, Sixth Circuit precedent prohibits district courts from dismissing the entire action. *Hartsfield v. Vidor*, 199 F.3d 305 (6th Cir. 1999). In *Hartsfield*, this Circuit declined to dismiss exhausted claims despite the presence of unexhausted claims in the plaintiff's action. *Id.* Later Sixth Circuit cases, however, have declined to apply *Hartsfield* and have dismissed mixed petitions. *See Bey v. Johnson*, 407 F.3d 801 (2005). Nonetheless, under Sixth Circuit Rule 206(c) "'[r]eported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court en banc consideration is required to overrule a published opinion of the court.'" *Id.* at 810 (Clay, J. dissenting). Consequently, this Court must apply the *Hartsfield* rule and uphold any claims that a plaintiff exhausts.

Moreover, the rationale of Sixth Circuit cases requiring dismissal of mixed petitions is unpersuasive. The cases state that because 1997e refers to "action" as opposed to "claim," a

plaintiff's remedies must be exhausted as to the entire action. *Id.* at 807. Section 1997e, however, states, "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "'[I]t does not follow that the only possible response to the impermissibility of the bringing of the action is to dismiss it in its entirety- to kill it rather than to cure it.'" *Bey*, 407 F.3d at 811 (Clay J., dissenting) (quoting *Ortiz v. McBride,* 380 F.3d 649, 657 (2d Cir.2004)). Additionally, § 1997e uses the terms "action" and "claim" interchangeably, weakening any argument that the concepts are distinguishable. *Id.* at 811 (Clay J., dissenting) ( citation omitted). Finally, it is highly unlikely that dismissing mixed petitions is judicially expedient and decreases piecemeal litigation. *Id.* at 812. "'[P]risoners are likely to simply amend their complaints to eliminate the unexhausted claims and refile,' leaving the district court "'with exactly the same claims that could have been resolved at the outset.'" *Id.* at 812 (citing *Jenkins v. Toombs,* 32 F. Supp. 2d 955, 959 (W.D.Mich.1999)). The three strikes rule contained in 28 U.S.C. § 1915(g) and filing fees are more likely to discourage prisoners from filing multiple and piecemeal actions than any rule requiring dismissal of mixed petitions. *Id.* at 812 (citing *Wilson v. Yaklich,* 148 F.3d 596, 602 (6th Cir.1998)).

**2. Plaintiff Has Exhausted His Claims Against Johnson, Nobles, CMS, and Metzmaker**

Plaintiff has exhausted his administrative remedies as to Johnson, Nobles, CMS, and Metzmaker. On July 31, 2000, Plaintiff filed grievance RRF-00-7-1406-12Z expressly naming

Johnson, Nobles and CMS, and alleging misconduct on their part.[1]  Additionally, Plaintiff appealed grievance RRF-00-7-1406-12Z all the way through stage III of the appeals process.   In grievance RRF 00-07-01406-12Z, Plaintiff states that he saw Johnson and Nobles in RCF's hallway on June 8, 2000, while a nurse was changing his bandages.  According to Plaintiff, he called out to Johnson and Nobles and informed them that he needed supplies to treat his burns, including bandages and ointment.  Plaintiff asked Johnson and Nobles if his family could send him supplies because the prison staff was unable to properly treat him due to the lack of necessary supplies.  Johnson informed Plaintiff that his family could not send him supplies because it would be a security breach but that she would personally bring him the needed supplies the next day.  According to Plaintiff, Johnson never brought him the necessary supplies and he continued to have problems with medical treatment.  Grievance RRF-00-7-1406-12Z also explicitly refers to problems with CMS.  The grievance states that Dr. Williamson informed Plaintiff that his therapeutic sleeve had not arrived because CMS refused to pay for it.  Plaintiff's allegation was sufficient to put the prison staff on notice that it needed to contact CMS about the claim.

Similarly, Plaintiff exhausted his administrative remedies as to Metzmaker.  Plaintiff filed a grievance naming Metzmaker and specifying actual misconduct, and took all available appeals. Grievance ARF 01-07-01326-17B  states that Metzmaker took Plaintiff's property and retaliated against him for filing grievances.  Although Plaintiff did not submit a copy of his stage III appeal,

---

[1]The magistrate judge erroneously determined that Plaintiff failed to provide documentation of this grievance, mis-citing the grievance as RRF 00-07-1406-*2f* instead of RRF 00-07-1406-*12z*. (Rep. & Rec., February 18, 2003, at 15-16.)  Similarly it erroneously stated that CMS was not named in RRF 00-07-1406-*12z*.  (Op. Sept. 9, 2003, at 9.)  Plaintiff did object to both findings and attached a copy of RRF 00-07-1406-*12z* to his objections.

he alleges that he is unable to because he never received a response. He did, however, submit a signed letter from the prison librarian, Mary Gray, stating that she received grievance ARF 01-07-01326-17B to mail to Lansing. (Am. Compl. Exh. B at 191.) Because only stage III grievances are processed in Lansing, the letter from Ms. Gray is sufficient evidence of Plaintiff's attempt to take his stage III appeal. Thus, Plaintiff, exhausted his remedies as to Metzmaker.

**C.**      **Plaintiff States Eighth Amendment Claims Against Johnson, Nobles, and CMS**

To state a claim for relief under the Eighth Amendment for a prison worker's failure to provide adequate medical care, a plaintiff must allege that the prison worker was 1) deliberately indifferent, 2) to a serious medical need. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005); *Blackmore v. Kalamzoo County*, 390 F.3d 890, 895 (6th Cir. 2004.) The first component, deliberate indifference, is subjective. *Estate of Carter*, 408 F.3d at 311. The plaintiff must establish that the prison worker was aware of the plaintiff's condition, and nonetheless, failed to act. *Id.* The second component, a serious medical need, is objective. *Id.* It requires the plaintiff to demonstrate the "existence of a sufficiently serious medical need." *Id.* "Where a plaintiff's claims arise from an injury or illness so obvious that even a lay person would easily recognize the necessity for a doctor's attention, the plaintiff need not present verifying medical evidence of serious medical need." *Blackmore*, 390 F.3d at 899.

In this case, Plaintiff stated a claim for relief under the Eighth Amendment against Johnson, Nobles and CMS because Plaintiff pleaded facts sufficient to establish deliberate indifference and a serious medical need. Plaintiff pleads facts indicating that Johnson, Nobles and CMS were aware of his second and third degree burns. Specifically, Plaintiff claims that he saw Johnson and Nobles

in the hallway while he was recovering from his burns. He explained that he was not receiving adequate medical care. Yet, Johnson and Nobles took no action despite their postitions as RCF's deputy warden and assistant deputy warden. Similarly, CMS was aware of Plaintiff's burn because Plaintiff's doctor, Dr. Williamson, sought approval for the costs of Plaintiff's burn care from CMS. Thus, Johnson, Nobles and CMS possessed subjective awareness of Plaintiff's injury sufficient to establish deliberate indifference. Moreover, it is indisputable that treatment for second and third degree burns qualifies as a serious medical need. A layperson would recognize the necessity for treatment in Plaintiff's case, and thus, Plaintiff need not present verifying medical evidence, although he did submit such evidence to the court. Therefore, this Court should not dismiss Plaintiff's Eighth Amendment claims against Johnson, Nobles and CMS for failure to state a claim.

**D.      Plaintiff States a First Amendment Claim Against Metzmaker**

Plaintiff states a First Amendment retaliation claim against Metzmaker. To state a claim for retaliation under the First Amendment, a plaintiff must allege: (1) that he or she engaged in protected conduct; (2) that he or she was subjected to adverse action; and (3) that the protected conduct was a substantial motivating factor for the adverse action. *Thaddeaus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (*en banc*). Once the plaintiff establishes that the protected conduct was a substantial motivating factor for adverse action, the burden shifts to the defendant to prove by a preponderance of the evidence he or she took the adverse action for legitimate reasons. *Id.* In grievance ARF 01-07-01326, Plaintiff alleges that Metzmaker put him in "lock up" for refusing to "sign off" on grievances. (Compl. Exh. A. at 115.) Plaintiff has a First Amendment right to file grievances. *Thaddeaus-X*, 175 F.3d at 395. This right must include the right to refuse to withdraw the grievance

or agree that the problems described in the grievance no longer exist or have been solved or the right has no meaning. Thus, Plaintiff has alleged that he engaged in protected conduct. Next, "lock up" is clearly an adverse action. Finally, Plaintiff alleges that his refusal to "sign off" was the motivating factor for Metzmaker's decision to place him in "lock up." To survive a motion to dismiss for failure to state a claim, Plaintiff need only allege causation. He need not prove causation at this point. Thus, Plaintiff stated a claim against Metzmaker under the First Amendment.

## III.
## CONCLUSION

For the foregoing reasons, I would **AFFIRM** the district court's order dismissing Plaintiff's claims as to Respondents Valley, Williamson, Thomas, Brown, Butler, Reed, Pasard, Short, Martin, Mustafa, Deputy Smith, Barbee, Behrman, O'Brien, Freed, Tate, Sermo, Jamrog, Bell, Klee, Oswalt, Butts, Epps, Franklin, Gladis, Roggnabuck, Dr. Barbara Smith and Detroit Receiving Hospital but **REVERSE** the order as the claims against Respondents Johnson, Nobles, CMS and Metzmaker.